# METROPOLITAN LIFE INSURANCE COMPANY *v.* FLOYD C. SAMIS

[No. 26, April Term, 1937.]

518

*Decided May 25th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and SHEHAN, JJ.

*G. Elbert Marshall* and *Frederick W. C. Webb*, with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*Stanley G. Robins,* with whom were *Long & Robins* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The Metropolitan Life Insurance Company, on March 18th, 1935, issued an industrial whole life policy to Etha Samis, providing for the payment of $600, upon receipt of proof of death, to the executor or administrator of the insured, unless under the provisions of the policy the company might, prior to the death of the insured, make any payment or grant any nonforfeiture privilege therein provided to the insured, or any relative by blood or marriage of the insured, or to any person appearing to said company to be equitably entitled to the same. The conditions, privileges, and concessions to policy holders, the schedule referred to as being on the fourth page of the policy, and any indorsement, either printed or written, by the company on any pages of the policy, were to be construed as a part of the policy in the same manner as if the same had been recited over the signatures of the president and secretary of the company by which the policy was evidenced.

The conditions of the policy, in substance, provided, among other things, that the policy constituted the entire agreement between the company and the insured, or the holder and owner thereof; that its terms could not be changed, or its conditions varied, except by the express agreement of the company, evidenced by the signature of its president or secretary; that the company assumed no obligation prior to the date of issue thereof; and that if the insured was not alive, or was not in sound health, on the date of issue thereof, or had within two years before said date been attended by a physician for any serious disease or complaint, or before said date had had any pulmonary disease, chronic bronchitis, cancer, or disease of the heart, liver, or kidneys, unless such medical attention or previous disease was specially recited in the space for indorsements indicated as a waiver by the company, then in such case the company might declare the

policy void, whereupon the liability of the company would thereby become limited to the return of the premium paid on the policy, except in the case of fraud, in which case all premiums would have been forfeited to the company. An additional condititon of the policy, pertinent to the issue involved in this case, provided that if the terms of the policy were not satisfactory, or if its conditions were not accepted and agreed to, the policy might be surrendered for cancellation at the office of the manager of the district to which the policy was delivered, within two weeks from date of issue thereof; and if, so surrendered within said period, the premiums paid thereon would be returned.

The undisputed facts are that the weekly premiums were regularly paid, and that there were no premiums in arrear at the time of the death of the insured, which occurred on September 17th, 1935; and that the policy was then in full force.

Prior to the date of issue of the policy, on March 8th, 1935, the insured executed an application, upon which the issuance of the policy was based, in which she declared, in order to induce the insurer to issue the policy, and in consideration thereof: (a) That she never had any of a number of complaints or diseases enumerated, among the diseases mentioned being "cancer or other tumor"; (b) that she was in sound health, and had no physical or mental defect or deformity of any kind; and (c) that she had not been under the care of any physician within three years. Following these statements the insured, over her signature, declared that they were true and complete, and agreed that any misrepresentation would render the policy void, and that the policy should not be binding upon the company unless upon its date the insured was alive and in sound health.

At the time of the application, the uncontradicted evidence in the record is to the effect that the insured was afflicted, and for at least two years had been afflicted, with a fibroid tumor of the uterus, which later developed into a carcinoma and caused her death; and upon the

refusal of the insurer to pay the loss, this suit was brought by her husband, the administrator of her estate.

The declaration contains but one count, and is based upon the terms of the policy. To it the general issue pleas of "never promised" and "never indebted as alleged" were filed; and later, by leave of the court, these pleas were amended so as to contemplate tender of the premiums paid.

At the trial of the case, the plaintiff testified that he was present when the agent of the insurer took the application for the policy, and that the occasion of the agent's visit to his home was for the purpose of making his regular collection on another outstanding policy of the company, which was in no manner connected with the policy involved in this suit. He then added: "After it was paid he turned and asked her (the insured) why she did not take out a policy. The answer she gave him was that she had a tumor for two or three years and she did not think she could get a policy. He pulled out a book and looked in it and says, 'There is nothing in here about it.' She says, 'I can't pass a doctor's examination.' He says, 'There is none.' Q. You say he pulled a book out of his pocket when he was told that she had had a tumor for two or three years and she didn't think she could get a policy? A. Yes, sir. Q. What was his reply? A. Says there is nothing in there about it; make no difference about that; and there was no physical examination whatever. Q. Did she or not tell him anything about having been attended by a physician—Dr. Lynch? A. He asked her when was the last time she had been attended by a doctor. I think she told him three years. I am not sure about that."

Carrie Lee Dill, a niece of the deceased, who lived with her aunt and said she was present at the time the application was made out by the agent and signed, testified as follows: "Q. In this question, number one, did he or not ask her whether or not she ever suffered from cancer or tumor? A. She told him she had a tumor. Q. What reply, if any, did he make to that? A. Well,

when he was trying to sell the policy he said it did not make any difference. Q. You know whether or not he asked her whether or not she had been attended by a physician during the past two or three years? A. Yes, sir. Q. What reply did she make? A. She told him it had not been for a long time; three or four years, maybe more. Q. Did she tell him the doctor she had consulted? A. Yes, sir, Dr. Lynch."

Dr. Lynch, the physician who attended the deceased for a number of years prior to and during her last illness, testified, on behalf of the defendant, that nine years before her death he made an examination of the insured and found that she was afflicted with a fibroid tumor. He then advised that the patient be operated upon; but this was not done. During the interval following the date of his first examination, the doctor noted distensions of the abdomen, and from time to time advised the operation; and when called to see her a few weeks prior to her death, he found that the tumor had developed into a carcinoma. He had not, however, attended the deceased within two years prior to her final illness; but he testified that, from his knowledge of her case, gained through his examinations and prior treatment, in his opinion the deceased was not in sound health on March 18th, 1935, the date on which the policy was issued; and that a fibroid tumor of the kind the patient had "was a hazard to anybody's life."

Frank C. Champlin, the agent of the insurer who secured the application, after identifying the original paper signed by the applicant, stated that he filled in the answers to the questions as given by the applicant, and that the paper embodied an accurate account of the answers so given. He further testified that it was signed by the applicant in his presence and in the presence of her husband, but denied the presence of Miss Dill. He further denied that the applicant had informed him that she had a tumor, or that he told her, after gaining such knowledge, that it did not make any difference and that she could get the policy if she wished; and disclaimed

any knowledge of the disability of the applicant. He admitted that the securing of the application was incidental to the collection of a premium on another policy, and stated that he wrote all the answers in the application, did not read the same to the applicant, and that she signed it in the presence of her husband, without reading it. According to this witness, the applicant was sitting six feet away from the agent when he filled in the application, and from the position she occupied she could not have seen the answers he was writing.

From a judgment entered on a verdict in favor of the plaintiff for the sum of $636, this appeal is taken.

At the trial of the case below the defendant offered four prayers; the court granting the second and third prayers and rejecting the first and fourth. The first prayer, in effect, was a general demurrer to the evidence; and the fourth prayer asked the trial court to instruct the jury that if it believed from the evidence that the insured was not in sound health on the date of issue of the policy sued on, the plaintiff was not entitled to recover in excess of the premiums actually paid on the policy; and the single exception found in the record is to the ruling of the court upon these prayers.

As has been noted, the application of the insured declares that she was not afflicted with "cancer or other tumor," whereas among the conditions which avoid the policy the affliction of "tumor" as distinct from "cancer" is omitted. In the application the insured declares that she was, at the time of its execution, in sound health; and among the conditions of the policy is that it became void if at the time of issuance the insured was not in sound health.

The theory of the plaintiff's case is that a fraud was practiced upon the insured by the insurer's agent; and that, under the conflicting testimony in the case, the question of the liability of the insurer was one for the jury. In *Great Eastern Casualty Co. v. Schwartz*, 143 Md. 452, 457, 122 A. 647, 649, it is said: "When facts, as to the materiality of which there may be a legitimate question,

are stated by the applicant to the authorized agent of the insurance company, and are disregarded in the application because of his decision that they are not material, the company is estopped to rely upon such facts to defeat a recovery." See *Ætna Life Ins. Co. v. Millar*, 113 Md. 686, 78 A. 483; *Dulany v. Fidelity & Cas. Co.*, 106 Md. 17, 66 A. 614; *Mutual Life Ins. Co. v. Mullan*, 107 Md. 457, 69 A. 385; *Monahan v. Mutual Life Ins. Co.*, 103 Md. 145, 63 A. 211, 5 L. R. A. (N. S.) 759; *Maryland Casualty Co. v. Gehrmann*, 96 Md. 634, 54 A. 678. The materiality of a matter affecting an insurance contract, however, regardless of the good faith of the insured, in statements made in the application, in the last analysis resolves itself into the question whether, if the true facts were known to the company at the time of its issuance of the policy, it would have entered into the contract, or as said in *Penn Mut. L. Ins. Co. v. Mechanics' Savings Bank & Trust Co.* (C. C. A.) 72 F. 413, 429, 38 L. R. A. 33: "A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against."

In the instant case, whatever may have been the circumstances under which the application was issued, and regardless of the fact, if it be true, that an innocent applicant was led to believe that she was insurable, it cannot be gainsaid that at the time of her application she was unfortunately afflicted with a malady which was expressly indicated in her application as one against which the company would not insure. Based upon the advice of her own physician, she had personal knowledge of her affliction; and whether she told the agent the truth, and was deceived by him, as to this material fact, cannot bind the insurer unless it be shown that with full knowledge of her condition the insurer assumed the risk. It can be conceived that she acted in absolute good faith; and when it is admitted that she did not read the application, and that a copy of

the same was not attached to the policy afterwards issued, the deduction that she labored under a misapprehension may be drawn. But according to the testimony of her husband, the policy was received by her shortly after it was issued; and while it is not clear from the record that she personally examined it, it is definitely shown that for approximately six months it was in the joint possession of herself and her husband, and easily accessible to her for examination. Had she examined this policy, it is obvious that she would have then ascertained that the company assumed no liability under the facts in her particular case.

In the oft-cited case of *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519, 6 S. Ct. 837, 841, 29 L. Ed. 934, the facts are strikingly similar to those before us. In that case the insured, with full knowledge that he was afflicted with diabetes, was solicited by two agents of the insurer, who themselves were aware of the physical condition of the insured, and were so advised by the insured at the time of securing the application, and who fraudulently filled in the same in direct conflict with the answers of the applicant and secured the signature of the insured thereto without his examination of the answers as therein written. In disposing of the case Mr. Justice Field said: "It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract, which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be canceled and the premiums returned."

Assuming that the agent did falsely write down the answers submitted to him by Mrs. Samis, it certainly

could not be assumed that the insurer intended or designed to clothe the agent with authority to perpetrate a fraud upon itself; and, independently of this deduction, it may be noted that a fraud under such circumstances could not have been perpetrated by the agent alone; or as stated in *Ryan v. World Mut. Life Ins. Co.*, 41 Conn. 168, quoted with approval in the *Fletcher* case, *supra:* "The aid of the plaintiff or the insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of *Lewis v. Phoenix Mutual Life Ins. Co.*, 39 Conn. 100. If she was an instrument, she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she signed it she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has a right to presume that he will do it. He has it in his power to prevent this species of fraud and the insurer has not."

Numerous cases may be found in the reports of various jurisdictions throughout this country indicating over-zealousness on the part of insurance solicitors, in many of them carried to the point of fraud and deception; and while it is the duty of courts at all times to protect the innocent applicant for insurance, they must likewise protect the insurer. To hold otherwise would invite collusion between agents and those seeking insurance. It is for this reason that insurers are careful to restrict their contracts to the terms of the written policy, and guard against possibility of the introduction of parol evidence for the purpose of avoiding the breach of warranties therein.

In *Loving v. Mutual Life Ins. Co.*, 140 Md. 173, 117 A. 323, 325, in which the applicant in his application falsified his answers, to the end that he was shown to be insurable, it was said: "Since the statements to the company's medical examiner made by the insured in reference to these matters in his application for insurance as an inducement to the company to issue the policy of insurance for which he applied are in direct conflict with the actual facts as shown by the uncontradicted testimony, we must assume that they were untrue. And, if such untrue statements as to matters within the knowledge of the insured were material to the contract of insurance, the insured was not entitled to recover on the policy under the law, as recognized in this state. That is, the concurrence of the two elements, the falsity of the statements and their materiality to the contract in respect to which they were made, constituted a complete defense to any action on the contract. Nor can there be any reasonable doubt that the representations were material to the contract." It is true that in the case from which the above citation is taken, a copy of the application was annexed to the policy; that the disability under which the applicant labored at the time of the application or previous thereto was tuberculosis, and the answers furnished by the insured were known to him to be false; whereas in the instant case no application was attached to the policy, and there was a variance between the application and the policy, as hereinbefore noted, and there is strong evidence in the record that the applicant acted in good faith and truthfully answered the questions put to her, but was deceived by the agent.

It may be argued that there is greater reason for an insurer to reject the application of one afflicted with tuberculosis than that of one whose disability consists of a tumor, and that upon the receipt of the policy with the word "tumor" eliminated therefrom, the insured in the case before us was lulled into the belief that, notwithstanding she was afflicted with the malady of a tumor, which may not have then developed into cancer or carci-

noma, she had been accepted as an insurable risk, with full knowledge of her disability, by the company. In any event, however, she was not in good health, and was fully aware of that fact; and she was warned by one of the conditions of the policy that the company assumed no obligations if at the time it was issued she was not in sound health. She was further warned that if the terms of the policy were not satisfactory, or if its conditions were not accepted and agreed to, the policy could be surrendered by her within the time stated, for cancellation and for the return of any premiums paid.

The question for consideration is not whether the applicant, either at or before the time of the application, was afflicted with either cancer or tumor, but whether at such time facts of which the insured had full knowledge were concealed from the insurer, knowingly or inadvertently, and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy. In other words, as stated in Bankers' Life Ins. Co. v. Miller, 100 Md. 1, 6, 59 A. 116, 117: "The better authorities agree that a material misrepresentation made by an applicant for life insurance, in reliance on which a policy is issued to him, avoids the policy, whether it be made intentionally, or through mistake and in good faith. This doctrine rests upon the fact that, even if the untrue material representation be innocently made, it deceives the insurer, who relies upon it, and thus the risk which he actually assumes is different from the one which the action of the applicant in making the representation led him to suppose he was assuming."

In Metropolitan Life Ins. Co. v. Jennings, 130 Md. 622, 625, 101 A. 608, 609, it was stated: "This court has said a number of times that ordinarily it is the province of the jury to determine the falsity and materiality of the representations made in an application for insurance policy, and the burden is upon the defendant to satisfy the jury of the truth of these defenses; but where the

falsity and materialty of the representations are shown by clear, convincing, and uncontradicted evidence, the court may so rule as a matter of law." *Fidelity Mut. Life Assn. v. Ficklin,* 74 Md. 172, 173, 21 A. 680, 23 A. 197; *Dulany v. Fidelity & Cas. Co., supra; Mutual Life Ins. Co. v. Rain,* 108 Md. 353, 70 A. 87; *Bankers Life Ins. Co. v. Miller, supra; Maryland Cas. Co. v. Gehrmann, supra; Aetna Life Ins. Co. v. Millar, supra; Mutual Life Ins. Co. v. Mullan, supra; Forwood v. Prudential Ins. Co.,* 117 Md. 254, 259, 83 A. 169; *Commercial Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725, 728. In the latter case it is said: "The question of materiality is not exactly whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk. * * * *Cooley, Briefs on Insurance,* 1965. Usually it is a question for the decision of a jury, but not always. Whenever in any case it is manifest from uncontradicted testimony or from the nature of the misrepresentations that they must have been material to the risk, the court is so to rule as a matter of law." In line with these authorities, in the case of *Sun. Ins. Office v. Mallick,* 160 Md. 71, 153 A. 35, 41, it is stated: "The materiality of a misrepresentation or concealment is generally a question of fact to be found by the jury. *Franklin Ins. Co. v. Coates,* 14 Md. [285] 299; *Mutual Ins. Co. v. Deale,* 18 Md. 26; *Columbian Ins. Co. v. Lawrence,* 10 Pet. 507, 9 L. Ed. 512. There may be, however, cases where the falsity or materiality is established by such clear, convincing, and uncontradicted evidence that it becomes the province and duty of the court to so declare as a matter of law." In the case before us, as has been observed, the uncontradicted evidence is that the insured was laboring under a disability at the time of the issuance of the policy, not contemplated by the insurer when it assumed the risk. This is shown not only by her personal physician, but is corroborated by her niece, and her husband, the plaintiff. Had these

material facts at the proper time been brought to the knowledge of the insurer, doubtless the policy would never have been issued. In such a state of facts the risk would not have been assumed; and as, through concealment or mistake in withholding a material fact, the policy was procured, the failure of the representative of the insured to reap the fruits of the policy leaves her estate in the same status as if the policy had never been issued; to rule otherwise would in effect penalize an innocent insurer. It seems too well settled in this state that the materiality of facts withheld by the insured from the insurer, under the circumstances in the case now before us, is a question of law; and accordingly the trial court was in error in refusing the defendant's first prayer. Inasmuch as the granting of that prayer would have limited the recovery of the plaintiff to the amount of the premiums actually paid, it becomes unnecessary for us to consider the rejection of the fourth prayer.

But the plaintiff below being entitled to recover the amount of premiums; to the end that a new trial may be had and verdict directed for that amount, followed by the judgment of *non pros.* and further proceedings under the Code, art. 26, sec. 17, the judgment will be reversed and the case remanded.

*Judgment reversed and case remanded for a new trial, with costs.*