**Leola BLAIR, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY,
Defendant.**

**Civ. A. No. 1430–70.**

United 'States District Court,
District of Columbia.

June 6, 1973.

Louis H. Cohen, Washington, D. C., for plaintiff.

John Eris Powell, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

This case was fully heard by the Court without a jury on remand treating the matter as one in equity for reformation of an insurance contract under the rule specially established for this particular case by the decision in Blair v. Prudential Insurance Co. of America, 153 U.S.App.D.C. 281, 472 F.2d 1356 (decided Dec. 29, 1972).

The facts proven conclusively show that the application did not accurately reveal decedent's medical history and that if the history had been stated the policy would not have been written.

Before issuing the policy Prudential's underwriting department made checks into the applicant's background which might have disclosed other medical data, but in the face of applicant's statement of a recent complete physical by another doctor with negative results, it made no inquiry of the applicant's family doctor, whose name and address were disclosed on the application. The adverse medical information was only disclosed when deceased died before the expiration of the two-year statutory contestability period after the policy had been in effect for 21 months. There is no proof that the adverse medical information then disclosed contributed to death of the policyholder.

The testimony of deceased's widow and the agent, who voluntarily left Prudential's employ sometime after the policy was written, is in direct conflict. The Court accepts the agent's testimony as generally the more credible and concludes he did not act in bad faith and as was his practice, accurately recorded the applicant's answers to the application questions he propounded. Deceased signed the application form in three places after the agent wrote in response to questions. He was given an opportunity to read the application at the time he applied for a policy but merely glanced at it. He did not read the form when the completed policy was delivered

to him and indeed the application in the reduced in-scale form attached to the policy is practically illegible. Deceased knew he had high blood pressure and had seen his doctor a number of times for this trouble, but this was not revealed to the agent at the time the policy was written.

This does not, however, determine the issue, for the decision on remand requires a broad inquiry into the overall equities of the situation not limited to the existence or nonexistence of actual bad faith or false recording by the agent. The agent's conduct normally is difficult to ascertain, particularly by a beneficiary absent during the making of the contract. It is only one among several factors, including the relative position of the applicant to the insurance company and their respective abilities to fully understand the transaction, establish the truthful material facts and bear the risk of mistakes. Therefore, even though there was no showing of fraud and false recording by defendant's agent, the Court finds that the equities established by the evidence here weigh in favor of plaintiff widow for the following reasons:

(1) The application was filled out by the agent in accordance with standard company practice, not by the insured.

(2) The application form is highly technical and difficult to understand, even after careful study.

(3) The deceased did not study the responses with any care but relied on the agent before he signed.

(4) With the passage of time, the manner and precision of the questions addressed to the insured by the agent cannot be reconstructed nor is there any proof deceased fully understood the full purport of what was asked. He had just passed a medical examination for his security guard job.

(5) The deceased revealed the name and address of his doctor and the company made no inquiry of the doctor, even though deceased formally waived his privilege. This was a family policy insuring other family members who consulted the same doctor.

(6) The application form attached to the policy when delivered is so reduced in size as to be practically illegible and the agent did not require deceased to re-examine the form.

(7) The uncontestability period had practically run.

Prudential, a major writer of monthly debit insurance, has millions of these policies. Rarely does it encounter significant misrepresentation where death occurs within the two-year period after the policy is written, although it investigates all such cases. The risk is extremely slight and can be easily spread. If the general principles of contract law are to be abandoned for policy reasons, as the remand has determined,—a view that has merit as a matter of social policy—then in disputes of this kind a court of equity must recognize the ability of the insurer to protect against false applications by more careful inquiry and the need to balance competing equities in favor of the families of these low-income policyholders.

The foregoing findings of fact and conclusions of law enumerating the equities on the controlling holding before the Court warrant judgment for plaintiff in the amount of $12,752.73, less $593.09 to be paid by the defendant directly to the Watson Funeral Home, plus interest from date of death, February 16, 1970. Each party shall bear its costs.

So ordered.