Joan A. **HOFMANN**

v.

**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY.**

Civ. No. W–74–683.

United States District Court,
D. Maryland,
June 6, 1975.

A. David Gomborov, Baltimore, Md., for plaintiff.

Biscoe L. Gray, Knapp, Tucker & Gray, Baltimore, Md., for defendant.

WATKINS, Senior District Judge.

The Plaintiff has sued the Defendant insurance company for $30,000.00 allegedly payable to the beneficiary of a life insurance policy issued to the Plaintiff's deceased husband, John E. Hofmann. This suit was originally filed in the Superior Court of Baltimore City and was removed to this Court under 28 U.S.C. §§ 1441 and 1446. Both the Plaintiff and the Defendant have moved for summary judgment.[1]

In the Plaintiff's declaration filed in the Baltimore City court, she sued for money payable under the insurance contract. The Defendant answered by alleging that no policy ever took effect because no meeting of the minds ever occurred due to the "materially false and misleading answers" given by the now deceased insurance applicant.

The facts gleaned from the pleadings and affidavits, and Defendant's exhibits, especially D and E, show that John E. Hofmann consulted Dr. Eliot W. Johnson on March 28, 1972, complaining of a bad cough, stomach discomfort, and occasional bleeding of the rectum. Dr. Johnson's records show that he found "hemorrhoids and general proctitis, smoking too much, 3 packs a day, blood pressure 138/96," and that he advised Mr. Hofmann to stop drinking.

On August 18, 1972, Mr. Hofmann consulted Dr. Hiroshi Nakazawa, whose report showed findings of "moderate hypertension, obesity, probable mild hepatomegaly, small left inguinal hernia, mild bronchitis, 210 lbs., liver function test negative, normal sugar cholesterol, no anemia, blood pressure 160/80."[2] The report states "patient advised to stop drinking alcoholic beverages on 8/18/72 and 3/21/73 or at least cut down."

Mr. Hofmann applied for an individual life insurance policy from the Defendant company on November 14, 1972. On November 22, 1972, he answered Part B of the application, which was propounded by a medical examiner of the company. His answers were recorded on the application and then signed by Mr. Hofmann. The parts of this application at issue are as follows:

2. Ever been treated for or had known indication of:

    1. Alcoholism?

|  | Yes | No |
|---|-----|----|
|  |  | X |

6. Other than above, within the past five years:

    a. Had any mental or physical disorder not listed above?

|  | Yes | No |
|---|-----|----|
|  |  | X |

    b. Had a checkup, consultation, illness, injury, surgery?

|  | Yes | No |
|---|-----|----|
|  |  | X |

The applicant did disclose an appendectomy at age fifteen and a tonsilectomy performed when he was a child.

---

1. The Plaintiff's motion for summary judgment was filed in the state court before removal to this court. Rule 81(c) of the Federal Rules of Civil Procedure states that she need not replead her motion unless ordered to do so by this Court. See *Murphy v. E. I. DuPont de Nemours & Co.*, 26 F.Supp. 999 (D.Pa.1939). The Defendant's Rule 56 motion was filed in this Court.

2. Mr. Hofmann also consulted Dr. Nakazawa on March 21, 1973, after his application to the Defendant. The doctor's report does not differentiate between the 1972 and 1973 findings, but reports "no change physically" between the visits. Apparently Hofmann could not be honest to his physicians, let alone the Defendant. Despite his visit to Dr. Johnson on March 28, 1972, he denied to Dr. Nakazawa on August 18, 1972, and March 21, 1973, that he had any "past medical history." Defendant's Exhibit E.

On April 23, 1973, Mr. Hofmann was admitted to Saint Agnes Hospital. The history sheet signed by Dr. Donato Vargas and taken at the time of Mr. Hofmann's admission to Saint Agnes Hospital contained the following:

> The information is mainly taken from the wife. Apparently the patient has been a heavy drinker since 15 years ago. His alcohol intake usually consists of whiskey 86 proof, consuming about two-fifths (gallons) daily, for the duration of the time mentioned.
>
> He smokes about two to three packs of cigarettes per day.[3]

Mr. Hofmann died at Saint Agnes Hospital on April 29, 1973. The death certificate stated that the immediate cause of death was terminal carcinoma, due to, or as a consequence of carcinoma of the lung. A significant condition, listed as contributing to death but not related to the terminal disease, was that of a chronic alcoholic.

The general law in the insurance area is clear: a material misrepresentation in the form of an incorrect statement in an application invalidates a policy issued on the basis of such application. *Mutual Life Ins. Co. v. Hilton-Green,* 241 U.S. 613, 36 S.Ct. 676, 60 L. Ed. 1202 (1916). This is true without inquiry into the presence of a conscious design to defraud, *Mutual Life, supra,* at 622, 36 S.Ct. 676.

This general policy has been codified in Maryland in 1956 in *Md.Ann.Code,* art. 48A § 374 (1972 Repl.Vol.), which states in relevant part:

> *Misrepresentations in applications for life or health insurance or annuities*

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

In *Union Trust Co. v. Kansas City Life Ins. Co.,* 197 F.Supp. 471 (D.Md. 1961), aff'd, 300 F.2d 606 (4 Cir. 1962), this Court applied the Maryland statute to a life insurance policy and granted a judgment n. o. v. for the insurance company when an applicant did not disclose consultation with two different doctors when he answered questions for the medical section of a life insurance application.[4] In *Union Trust Co., supra,* as in the present case, the applicant did disclose minor but irrelevant medical treatment. The court found as a matter of law that the false answers materially affected the risk and hazard, *Union Trust, supra,* at 479.

This Court had another opportunity to construe the Maryland statute in *State*

---

3. The Plaintiff has objected to the admission of this hospital record on the ground that it is only a selected record. The Plaintiff has, however, stipulated to the truth of the record.

4. This case has been read as recognizing a presumption created by Maryland law that risk is affected by such deceptive answers. *Oregon Nat'l Life Ins. Co. v. Superior School Photo Serv., Inc.,* 462 F.2d 1235 (9 Cir. 1972). Such a presumption would be rebuttable by credible evidence. Were such

conflicting evidence offered, materiality would be a question for the jury. *Oregon Nat'l, supra,* at 1236. An example of such evidence is found in the *Oregon Nat'l* case, when it was shown that the insurance company had actual knowledge of the undisclosed facts. It had learned through an insurance medical information bureau that the applicant had heart abnormalities, and, as a result, the company had written the insurance at a substantially increased premium.

*Farm Auto. Ins. Co. v. West,* 149 F. Supp. 289 (D.Md.1957), a case involving automobile insurance. The insurance company was allowed to rescind its policy because the insured had not disclosed the fact that he had been involved in prior accidents, and that he had indeed had his driver's license revoked in two different places. This Court made the following statement regarding misrepresentation which is as true for Mrs. Hofmann now as it was eighteen years ago:

> A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable as against the applicant and all who stand in no better positions, whether such misrepresentation be made intentionally, or through mistake and in good faith . . . .

*State Farm Mut. Auto. Ins. Co., supra,* at 305.

■ Since a material misrepresentation on an insurance application avoids the policy, the next question to be answered is what facts can be considered material. Turning to Maryland law for the answer, we can use the following language from *Metropolitan Life Ins. v. Samis,* 172 Md. 517, 524, 192 A. 335, 338 (1937):

> A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against.

Having established the appropriate standard for materiality, the next step is to determine if it is a question of law, appropriate for summary judgment, or a question of fact, to be answered by the jury. The Plaintiff states that the illnesses concealed from the company were not serious and grave ailments, and thus that their materiality to the risk is a jury question. The Plaintiff relies in this answer on the general standard often given in Maryland that the material-

ity of representations is ordinarily a question for the jury. But this general test has an exception, as stated in *Commercial Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725, 728 (1934):

> Whenever in any case it is manifest, from uncontradicted testimony or from the nature of the misrepresentations, that they [the misrepresentations] have been material to the risk, the court is so to rule as a matter of law.

*Accord, Metropolitan Life Ins., supra,* at 529.

Maryland case law affords strong precedent that misrepresentation about alcoholism is, by its very nature, material to the risk. The excessive use of alcohol, a fact that the insurance company did not know, but would have known had Mr. Hofmann revealed his visits to Drs. Johnson and Nakazawa, has been held to be material to the risk as a matter of law in *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, 468, 69 A. 385, 390 (1908) and *Forwood v. Prudential,* 117 Md. 254, 258, 8 A. 169, 170–71 (1912).

Another of Plaintiff's assertions, that her husband had never been advised that he was an alcoholic, is not relevant to this risk question. Assuming that this is true, *i. e.,* that he was never told, the fact remains that Mr. Hofmann concealed medical visits, which, had they been disclosed, would have given the Defendant information that, this Court finds, as a matter of law, would have been material to the risk.

■■ The non-disclosure of the visits, in addition to the undisclosed ailment, is another factor material to the risk. In *Mutual Ins. Co. v. Mullan, supra,* at 466, 69 A. 385, at 389, the court noted that "a false statement as to whether the applicant has consulted or been treated by a physician is material to the risk . . . ." The *Mullan* court focused on the essential question in these insurance cases on page 467, 69 A. on page 389:

> . . . (C)onsider, not what disease, if any, caused the death of the

insured, but the effect that said answers might have had in procuring the issuance of the policy . . . .

We need not indulge in conjecture as to the possible effect that nondisclosure had, in our case. The affidavit of the Defendant's associate medical director, Jerzy Gajewski, M. D. Ph. D., states that it is "the invariable rule and practice of the Company to reject any application for life insurance made by a person shown to be excessively addicted to the use of alcohol, and showing a diagnosis of hypertension, hepatomegaly and the other ailments and conditions with which the applicant was found to have been suffering . . . ."[5]

Another consideration on materiality is pointed out by the fact that Mr. Hofmann disclosed an appendectomy and a tonsilectomy and yet did not disclose much more recent medical visits for rectal bleeding, bad cough, and stomach discomfort. In overturning a jury verdict in the beneficiary's favor, the Seventh Circuit made the following comments on selective nondisclosure in *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31 (7 Cir. 1971):

> The applicant cannot be the judge of the materiality of his health problems; he must disclose all information known to him and permit the insurer to determine its materiality. . . .
>
> If the insured did not believe his heart condition was material to the

risk to be undertaken by Concord, then why did he suppress it? In a layman's mind the heart condition would be no less material than the hernia. The inference is clear that he disclosed the hernia because he believed it not material to Concord's acceptance of his application, but suppressed the heart condition because he thought it material.

■ There is, however, a consideration to a finding of materiality as a matter of law which must be addressed. In the principal case, *Union Trust, supra*, as well as in many Maryland cases finding material misrepresentation as a matter of law, the concealed medical affliction was the direct cause of death. In our case the causation factor is not as clear. The concealed illness of alcoholism was but a contributing cause of death. Lung cancer, the principal cause, was not diagnosed in the concealed medical visits, although these examinations did show "smoking 3 packs a day," cough and bronchitis—all directly relevant to lung carcinoma. But even without the undisclosed excess smoking in the present case, the cases have not uniformly required that the cause of death be the self-same undisclosed illness or condition.[6] The courts would seem to concur with the *Mullan* court's emphasis on the effect of the answers in procuring the policy rather than consideration of the particular disease. *See Mullan, supra*, at 467, 69 A. 385.[7] The court in

---

5. The Plaintiff challenges this affidavit by stating in her answer that it was not in proper form. In this case, such answer is not enough. The words of Judge Learned Hand in *Radio City Music Hall Corp. v. United States*, 135 F.2d 715 (1943), dealing with a directed verdict, are equally applicable to this summary judgment case:

   When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result.

*Accord, Zampos v. United States Smelting, Refining and Mining Co.*, 206 F.2d 171 (10 Cir. 1953).

6. See attached chart, categories "a" and "b". Note that in *Forwood, Mullan, Hawley* and *Loving*, the undisclosed illness was at best a contributing cause.

7. For another statement of this proposition, see *Metropolitan Life Ins. v. Samis*, 172 Md. 517, 529, 192 A. 335, 340 (1937):
   The question of materiality is not exactly whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk.

| CASE: | LOVING v. MUT. LIFE INS. CO., 140 Md. 173, 117 A. 323 (1922) | FORWOOD v. PRUDENTIAL INS. CO., 117 Md. 254, 83 A. 169 (1912) | MUT. LIFE INS. CO. v. MULLAN, 107 Md. 457, 69 A. 385 (1908) |
|---|---|---|---|
| a. Undisclosed illness, treatment | T.B. sanitarium | Use of malt liquors, wines and spirits in excess | Cirrhosis of liver, consultation and treatment by three physicians, malaria, D.T.'s |
| b. Cause of Death | Traumatic pneumonia (Deceased ran into door) | ? | T.B. |
| c. Disposition by trial court | Instructed verdict for insurer | Instructed verdict for insurer | Jury verdict for insured |
| d. Disposition by Court of Appeals | Affirmed | Affirmed | Reversed |
| Factor considered material as a matter of law | Past treatment and diagnosis of T.B. | Use of intoxicants in excess | Non-disclosure of consultation; heavy drinking |

| METROPOLITAN LIFE INS. v. SAMIS, 172 Md. 517, 192 A. 335 (1932) | MONUMENTAL LIFE INS. v. TAYLOR, 212 Md. 202, 129 A.2d 103 (1957) | PROVIDENT LIFE & ACCIDENT v. HAWLEY, 123 F.2d 479 (4 Cir. 1941) | UNION TRUST CO. v. KANSAS CITY LIFE INS. CO., 197 F. Supp. 471 (D.Md.1961) |
|---|---|---|---|
| Tumor of uterus | Consultation with three physicians, treatment of angina pectoris | Treatment of arthritis, trichomonas, rheumatism, high blood pressure, insufficient mitral heart valve | Heart disease |
| Cancer of uterus | Angina pectoris | Puncture of esophagus when physicians tried to remove beef from throat, contributing cause: high blood pressure; moderate heart disease | Heart attack |
| Jury verdict for insured | Jury verdict for insured | Jury verdict for insured | Judgment n. o. v. for insurance company |
| Reversed and remanded. Insurer's general demurrer to the evidence should have been granted | Reversed. Insurer's demurrer should have been granted | Reversed and remanded with instructions to cancel policy | Affirmed |
| Existence and treatment of tumor | Angina, patient taking nitroglycerine tablets | Whatever undisclosed diagnosis showed | Non-disclosure of heart disease |

*Metropolitan Life Ins. v. Samis,* 172 Md. 517, 528, 192 A. 335, 339 (1937) put it this way: the question should not be whether or not the applicant was afflicted with a particular disease, but whether at the time of application "facts of which the insured had full knowledge were concealed from the insurer, knowingly or inadvertently, and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy."

The final consideration is the present posture of this case: motions by both sides for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has long advocated the cautious use of Rule 56 in order to preserve a party's right to a trial of disputed facts. *Associated Press v. United States,* 326 U.S. 1, 65 S.Ct. 1416, 89 L. Ed. 2013 (1945).

The Fourth Circuit has imposed the heavy burden on the moving party of showing "a right to judgment with such clarity as to leave no room for controversy and establish[ing] affirmatively that the adverse party cannot prevail under any circumstances." *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245, 249 (4 Cir. 1967). Under this strict standard, summary judgment "should be granted only when it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4 Cir. 1950).

Our research on these insurance cases has not disclosed a case in which summary judgment has been granted; all such cases have proceeded to trial.[8] However, there are examples of directed verdicts, or in state legal parlance, instructed verdicts, *see, e. g., Union Trust, Loving,* and *Forwood, supra,* and one guage of the appropriateness of summary judgment is the appropriateness of a directed verdict, *Christianson v. Gaines,* 85 U.S.App.D.C. 15, 174 F.2d 534 (1949):

> The principle seems to be that if, under the facts developed, the court at a trial would be required to direct a verdict for the moving party, then a summary judgment should be entered.

*Christianson, supra,* at 536.

The essential question remains: should the jury decide this case? The sine qua non for submission of an issue to the jury is a conflict in testimony, *Monumental Ins. Co. v. Taylor, supra; Hancock Mut. Life Ins. Co. v. Adams,* 205 Md. 213, 107 A.2d 111 (1953). There does not seem to be a conflict in the testimony here. Mrs. Hofmann does not deny the undisclosed visits, the doctors' findings, or that her husband received medical advice to cut down on his drinking and smoking.

The remaining issue is the balancing of the equities. The insurance company's defense is really an equitable one, as stated by Judge Frank Kaufman, sitting by designation, in *Blair v. Prudential Ins. Co.,* 153 U.S.App.D.C. 281, 472 F.2d 1356 (1972), a case wherein summary judgment was granted for the insurance company even though the applicant signed in blank and his wife told the agent the truth at the time of the signing. The Court of Appeals reversed the trial court, saying:

> The defense of material misrepresentation, however, is in its true nature an equitable defense. . . . [I]n each of the Maryland cases, the decision adverse to the claimant came after trial and a full development of the

---

8. See category "c" on the chart, *supra,* at note 6.

facts. Presumably, even in Maryland, a claimant could advance a reason for nonreading sufficient to enable him to overcome the defense of misstatement.

An examination of the authorities reveals that American courts have adopted a number of different positions when confronted with the question posed in this case. Some, like Maryland, have placed a heavy and perhaps an almost insurmountable burden on the applicant to read and be responsible for all statements in or omissions from the application submitted by him.

*Blair, supra,* at 1360–61. On remand, the court considered the equities and the plaintiff won a verdict, 366 F.Supp. 859 (D.D.C.1973).

However, the equities in this case would seem to call for the granting of summary judgment. The Defendant is sure to prevail. There is the "almost insurmountable burden on the applicant" referred to by Judge Kaufman in *Blair,* the uncontested evidence on undisclosed visits to doctors, undisclosed heavy drinking, heavy smoking, enlarged liver, etc. Perhaps the most equitable thing to do in this situation would be to grant summary judgment and spare the Plaintiff the unnecessary expense and agony of a trial.

In *Metropolitan Life Ins. Co. v. Jennings,* 130 Md. 622, 101 A. 608 (1917), the court stated that a directed verdict should have been granted when the insurance applicant had not disclosed information vital to the risk. In *Union Trust, supra,* at 472, it will be recalled that judgment n. o. v. was granted, and that this Court expressed "a strong tentative reaction that the motion [for a directed verdict] was meritorious." Although no case in this jurisdiction has

granted summary judgment in this situation, this Court finds that where, as here, there is the uncontradicted fact of two concealed visits to doctors, which would have shown the presence of a drinking problem, recognized as a matter of law to be material to the risk, as well as an excessive smoking habit known to be related to the cause of death,[9] and where a statute states clearly that concealment of such facts prevents recovery under a policy, summary judgment is appropriate. To contradict this conclusion, the Plaintiff would have to show that the visits did not occur or that the doctors' records did not state that her husband was an excessive smoker and also had been advised to stop drinking. She has done neither. Her attempts to show that her husband did not consider the concealed visits important are of no avail.

"A material misrepresentation made by an applicant for life insurance in reliance on which a policy is issued to him, avoids the policy, whether it be made intentionally, or through mistake and in good faith" . . . "because it results in the assumption by the insurer of a risk different from that which the applicant led it to suppose it was assuming." *Hancock Mut. Ins. Co. v. Adams,* 205 Md. 213, 221, 107 A.2d 111, 114 (1954).

*Union Trust, supra,* at 478.

For the reasons above stated, it is ordered:

1. That Plaintiff's motion for summary judgment be and is hereby denied;

2. That Defendant's motion for summary judgment be and is hereby granted; and

3. That judgment is hereby entered in favor of Defendant.

---

9. The fact that smoking is unhealthy and tied to lung cancer is a matter of general public knowledge. The following is found on the sides of all cigarette packages:

"Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health."