39 F.3d 1177
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
George W. HOLSEY, Plaintiff-Appellant,
v.
OHIO STATE LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 93-2524.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 7, 1994.
Decided: October 31, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-93-1181-S)
 Harold B. Murnane, III, John M. Gill, Murnane & O'Neill, Glen Burnie, Maryland, for Appellant.
 Robert P. O'Brien, Gina M. Harasti, Niles, Barton & Wilmer, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 George Holsey appeals the district court's grant of summary judgment to Ohio State Life Insurance Company (Ohio Life) in Holsey's action for proceeds of an insurance policy which Ohio Life refused to pay. Finding no error, we affirm.
 
 
 2
 George Holsey and his wife, Angela Holsey, executed an application for life insurance on March 14, 1989, with Ohio State Life Insurance Company (Ohio Life). George Holsey was designated as the primary insured and Angela Holsey was named as an additional insured. Angela Holsey died on May 14, 1990. Her death occurred within the two year contestability period set forth in the policy. Ohio Life subsequently denied George Holsey's claim for benefits under the policy following its investigation, which revealed that Mrs. Holsey had not disclosed her smoking history on the insurance application. As a result, Ohio Life rescinded the policy on Angela Holsey in September 1990 and refunded the premium paid for her coverage.
 
 
 3
 George Holsey filed this action against Ohio Life in March 1993 in the Circuit Court of Maryland seeking to recover the face amount of the life insurance policy. Ohio Life subsequently removed the case to the District Court for the District of Maryland. Ohio Life filed a motion for summary judgment, and George Holsey filed a Memorandum in Opposition to the motion for summary judgment. After concluding that an oral hearing was unnecessary to decide Ohio Life's motion for summary judgment, the district court issued an order in November 1993 granting summary judgment to Ohio Life. The district court found that Ohio Life was entitled to summary judgment as a matter of law because Angela Holsey failed to disclose her smoking history on the insurance application. George Holsey appeals.
 
 
 4
 If the defendant in a civil case moves for summary judgment, the judge must inquire whether a fair-minded jury could return a verdict for the plaintiff on the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). All factual allegations made by the nonmovant, and all reasonable inferences therefrom, are read in favor of the non-moving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir.1980). Although the party moving for summary judgment initially bears the burden of demonstrating that no genuine issue of fact exists, the non-moving party cannot rest on the allegations of his pleadings but must oppose the motion with any of the evidentiary materials listed in Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 256; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmovant must offer some "concrete evidence from which a reasonable juror could return a verdict in [her] favor," or some " 'significant probative evidence tending to support the complaint.' " Anderson, 477 U.S. at 256 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). Rule 56(c), Fed.R.Civ.P., does not allow "the mere existence of some alleged factual dispute between the parties" to defeat a proper motion for summary judgment. Anderson, 477 U.S. at 247-48. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id . at 252. This Court reviews summary judgment de novo, to discover whether a genuine issue of material fact exists. Id. at 247-48; Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 
 5
 Maryland law authorizes an insurer to deny recovery for a misrepresentation, omission, concealment of fact, or incorrect statement made on an application for insurance if the misstatement is:
 
 
 6
 (1) Fraudulent; or
 
 
 7
 (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
 
 
 8
 (3) The insurer in good faith would either not have issued ... the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
 
 
 9
 Md. Ann.Code art. 48A, Sec. 374 (1991 Repl.Vol.); see Hofmann v. John Hancock Mut. Life Ins. Co., 400 F.Supp. 827, 829 (D. Md.1975).
 
 
 10
 In the case at bar, Ohio Life contends that Angela Holsey failed to disclose her history as a smoker on the life insurance application, and that this misrepresentation justified rescission of the policy. In determining the validity of this claim, the fact finder must first determine whether a misrepresentation had been made. If so, the fact finder then decides whether that misrepresentation was material. Fitzgerald v. Franklin Life Ins. Co., 465 F.Supp. 527, 534-35 (D. Md.1979), aff'd, 634 F.2d 622 (4th Cir.1980). In considering the district court's order granting summary judgment, however, this Court must consider whether "reasonable jurors could find by a preponderance of the evidence that the Appellant is entitled to a verdict." Anderson, 477 U.S. at 252.
 
 
 11
 At issue in this case are the following questions and answers on the policy application:
 
 
 12
 DO ANY OF THE PROPOSED INSURED SMOKE CIGARETTES? YES NO IF YES, WHO?# 6D6D6D6D6D6D6D6D6D6D6D6D6D6D6D6D6D6D 6D6D6D6D#
 
 
 13
 IF NO, WHEN DID THEY STOP?# 6D6D6D6D6D6D6D6D6D6D6D# FOR WHAT REASON?
 
 
 14
 The Holseys answered "No" to the first question and left the subsequent questions blank. George Holsey admitted in an affidavit that his wife had a smoking history of approximately one pack per day for at least sixteen years.[1] George Holsey challenges the rescission of the policy, however, contending that the foregoing question was ambiguous and not reasonably designed to elicit the information material to the risk assumed.[2] He contends that the focus of the question, "DO ANY OF THE PROPOSED INSURED SMOKE CIGARETTES?", inquires as to whether any of the proposed insured were cigarette smokers at the time the application was completed, here March 14, 1989. He claims that because his wife was not smoking on that date, she did not make a misrepresentation. He further contends that the question "IF NO, WHEN DID THEY STOP?" is not addressed to the applicants. He claims it is addressed to some third person, presumably the insurance agent completing the application.
 
 
 15
 We agree with the district court's conclusion that the question was not ambiguous. See Parker, 900 F.2d at 778; see also Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir.1993). The context of the question makes it clear that the insurance company was interested in eliciting information about the insured's smoking habits, past or present, if any existed. See Hofmann, 400 F.Supp. at 835 n. 9.
 
 
 16
 Even assuming the Holseys believed that the question "IF NO, WHEN DID THEY STOP?" was directed to the agent who sold them the insurance, they were obligated to make certain that the application contained accurate information and no omissions. It may have been the custom of the agent to read the questions to them and insert the accurate information. However, under Maryland law, it is immaterial that it is the agent who inserts the false representations about material matters in an application for insurance, because if the insured has the means to ascertain that the application contains false representations, he is charged with the misrepresentations just as if he had actual knowledge of them and was a participant therein. Sardenes v. Aetna Life Ins. Co., 319 A.2d 858, 863 (Md.App.1974); see Foreman v. Western Reserve Life Assur. Co., 716 F.Supp. 879, 883 (D. Md.1989); Fitzgerald, 465 F.Supp. at 535; Nationwide Mut. Ins. Co. v. McBriety, 230 A.2d 81, 83 (Md.1967). The agent presented the blank application to the Holseys to look at. The agent then asked the Holseys each of the questions listed on the application, checking the boxes according to the answers given by the Holseys. Once the application was completed, the Holseys reviewed and signed it, certifying on the application that they had read it and that their answers were complete and accurate. Thus, the Holseys misrepresented information on their insurance application.
 
 
 17
 The next inquiry is whether the misrepresentation was material to the risk assumed by the insurer. Md. Ann.Code art. 48A, Sec. 374 (1991 Repl.Vol.). Under Maryland law, an insurer may deny recovery on an insurance policy for a misrepresentation, if the "insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate...." Md. Ann.Code art. 48A, Sec. 374. A fair test of materiality is whether a reasonably careful and intelligent person would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against. Metropolitan Life Ins. Co. v. Samis, 192 A. 335, 338 (Md.1937). In a later Maryland case, the court held that the test for materiality is whether the misrepresentation "would reasonably influence the insurer's decision as to whether it should insure the applicant." Silberstein v. Massachusetts Mut. Life Ins. Co., 55 A.2d 334, 338-39 (Md.1947). "[T]he materiality inquiry focuses on what the insurer's use of the undisclosed information would have been in determining the life risk of the insured at the time of application for the policy." Fitzgerald, 465 F.Supp. at 535.
 
 
 18
 Ohio Life states that had it known of Mrs. Holsey's smoking history, it probably would not have issued the policy, and, if it had, it would have required a substantially higher premium. George Holsey contends that no evidence shows that the Holseys were defined or classified as non-smokers on the policy application. However, this argument is meritless because a non-smoker policy was issued to the Holseys. James King, Vice President of Insurance Operations for Ohio Life, stated in an affidavit that "[i]nformation regarding the smoking history of an applicant for life insurance is material to evaluating the risk, particularly where the proposed insured has an extensive history. It is company policy that a person will not be considered a non-smoker until he or she has ceased smoking for two full years." He further stated that "had the company known of Mrs. Holsey['s] previous smoking [ ] history, it would not have issued the policy, or it would have demanded a higher premium for the policy on the additional insured." See Parker, 900 F.2d at 778; Mutual Ben. Life Ins. Co. v. JMR Elecs. Corp., 848 F.2d 30 (2d Cir.1988). The Holseys obtained a lower premium through misrepresentation about Mrs. Holsey's smoking, and, under Maryland law, that showing is sufficient to direct a verdict for Ohio Life. Parker, 900 F.2d at 778. Therefore, the record clearly establishes a material misrepresentation sufficient to warrant rescission of the contract by Ohio Life. Because no genuine issue of material fact exists as to this issue, the district court properly granted summary judgment to Ohio Life.
 
 
 19
 Finally, George Holsey contends that Ohio Life was reckless in evaluating the application with respect to Mrs. Holsey's smoking history and is, therefore, barred from rescinding the policy. He contends that because the "IF NO, WHEN DID THEY STOP?" portion of the smoking question was left blank on the application, Ohio Life could not rely on this response to issue a non-smoker policy. The record shows that this is the first time this issue has been raised. Thus, this Court will not consider it. Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985).
 
 
 20
 Accordingly, we affirm the district court's order granting Ohio Life summary judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument will not significantly aid in the decisional process.
 
 AFFIRMED
 
 
 [1]
 Medical records from the Johns Hopkins Hospital obtained by Ohio Life during its investigation following Angela Holsey's death establish that she gave a history of smoking one pack of cigarettes per day for twenty years and as of February 19, 1990, eleven months after the application, was smoking one-half of a pack of cigarettes per day. Whether Angela Holsey was still smoking at the time the application was completed was disputed by the parties below but was deemed immaterial by the district court in light of its holding that the Holseys' failure to disclose Angela Holsey's smoking history constituted a material misrepresentation justifying Ohio Life's rescission of the policy
 
 
 [2]
 If an application is ambiguous it must be construed in favor of the policyholder. See Parker v. Prudential Ins. Co., 900 F.2d 772, 777 (4th Cir.1990). Consequently, failure to disclose material information is grounds for rescission only if the application form was " 'reasonably designed to elicit from the applicant the information which was material to the risk.' " Parker, 900 F.2d at 778 (quoting People's Life Ins. Co. v. Jerrel, 318 A.2d 519 (1974))