## CONTINENTAL CASUALTY COMPANY v. PFEIFER

[No. 341, September Term, 1966.]

630

*Decided May 11, 1967.*

*Motion for rehearing filed June 9, 1967, denied June 13, 1967; opinion modified.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*William A. Mann,* with whom was *H. Thomas Sisk* on the brief for appellant.

*Martin H. Freeman,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief for appellee.

HORNEY, J., delivered the opinion of the Court.

When the Continental Casualty Company (the insurer) disclaimed coverage under the certificate issued to Dr. Jacob John Pfeifer (the insured) under a group disability indemnity policy, he brought this action for a declaratory judgment stating his entitlement to the benefits specified in the policy and certificate and for an order requiring the insurer to pay the monthly payments then due and thereafter to become due in accordance with the terms of the policy and certificate. The insurer defended the claim for benefits on the premise that the insured made material misrepresentations as to his good health, his freedom from physical impairment and his full-time practice of medicine at the time he signed the application for insurance. At the conclusion of the trial, the case was submitted to the jury on special issues, and the answers to those which called for an answer being favorable to the insured, the trial court directed the entry of a judgment *nisi* for $18,239 and ordered payment of $750 per month "to continue and to be terminable only according to the terms" of the group policy and certificate of insurance. When the judgment became absolute, the insurer appealed to this Court. The questions on appeal concern the sufficiency of the evidence and the propriety of the special issues submitted to the jury and the instructions of the court with respect thereto.

On several prior occasions before he decided to apply for the insurance, the doctor had received a brochure from the insurer informing him that, if he was an eligible member of the American Medical Association and applied for coverage on or before a specified date, he could enroll, irrespective of his age, his past medical history and his present physical condition, in a group disability indemnity plan, under which he would be paid monthly benefits—of $1000 under Plan A, $750 under Plan B

and $500 under Plan C—in case he should become totally disabled as the result of an injury arising out of an accident, subject only to the right of the insurer to limit the obtainable benefits to Plan C for certain impaired risks.

The doctor, before the offer expired, applied for insurance under Plan B believing, from what he had read in the brochure, that such disabilities as he had at the time would not affect the payment of benefits he would be entitled to receive should he become totally disabled. The schedule of definitions in the certificate defined an "eligible member" as one "who is not retired and who is actively performing the full-time duties of his occupation" coupled with a proviso that a member "who is temporarily unemployed or temporarily absent from the full-time duties of his occupation for reasons other than sickness or injury shall nevertheless be deemed to be actively performing the full-time duties of his occupation." "Retired" was defined as the "permanent withdrawal from the pursuit of a full-time gainful occupation." "Injury" was defined as "bodily injury caused by an accident." The term "total disability" was described as that "which wholly and continuously prevents the insured from performing the duties of his occupation and which requires care and attendance of a currently licensed physician or surgeon other than the insured." And "regular care and attendance" was said to mean "observation and treatment to the extent necessary under existing standards of medical practice for the condition causing total disability."

The certificate of insurance was issued pursuant to an application completed and signed by the doctor. It contained several pertinent questions. Two of them—"Are you now actively engaged in your occupation on a full time basis?" and "Are you now to the best of your knowledge and belief in good health and free from any physical impairment or disease?"—both of which were answered in the affirmative, are the ones which gave rise to the controversy.

Less than four months after February 15, 1963, the effective date of the coverage, the doctor sustained an injury as the result of a fall on board the ship on which he was then employed as the ship's doctor, for which he subsequently claimed the benefits afforded by the policy. The payments of benefits were

to begin on May 25, 1964, one year after the date of the accident, but no payments were ever made. Seven months later, when the insurer disclaimed coverage on the ground that the doctor was not engaged in full-time practice of medicine at the time of the injury and tendered return of the premiums that had been paid, the insured brought this suit. Later, the insurer also disclaimed liability on the ground that the doctor did not disclose in the application that he had a fractured left wrist at the time he answered the question in the application concerning physical impairments.

Although he left the Veterans Administration in August of 1954, the doctor, instead of retiring from the practice of medicine, signed up with several ship companies as a ship's doctor. Beginning in April of 1955 and continuing through May of 1963, he made sixty-two trips aboard ship. Normally, the sailings were interspersed with shore leaves of varying lengths. After a voyage which terminated in December of 1962, he sustained a Colles's fracture of his left wrist. Apparently he decided while he was recovering from that injury that he needed the disability insurance and he applied for it on January 29, 1963. His wrist was still in a cast when he applied for the insurance, but it was removed nine days later. Although he was of the opinion that had he then been called, he could have gone on duty aboard a ship, the Public Health Department did not note his fitness for duty until the middle of April of 1963. About a week later, when he received what was destined to be his last call to take a ship, the insured was examined by the medical doctor of the American Export Isbrandtsen Lines and was found to be fit for duty before he was accepted. On board the ship, the insured attended to his duties as the ship's doctor until he was injured on May 26, 1963. The injury sustained on this occasion was a Colles's fracture of the *right* wrist, which, unlike the first injury, permanently disabled him.

At the trial, the insured stated that he did not mention the fractured left wrist in the application because the brochure had led him to believe that it was not necessary and because the wrist was rapidly healing without complications. And, so far as he was aware, there were no other ailments. One leg was shorter than the other and he had previously received com-

pensation for the inflammation of a bursa which had cleared up. Neither condition affected his ability to perform the duties of a medical doctor at the time he applied for the insurance.

As a qualified medical expert, the insured testified in his own behalf as to the permanence of the injury last incurred, and his testimony was corroborated by that of another medical expert. The insured was not deemed to be fit for active duty as of his last treatment at the Public Health Hospital in April 1965 and the prognosis, according to the medical records, was that his condition would remain the same with the same symptoms. And he was to receive no further treatments.

When the insurer moved for a directed verdict at the end of the insured's case and at the conclusion of its own case on the grounds that the insured was not engaged in the active practice of medicine, that he was physically disabled at the time of the application and that the fractured right wrist had not totally disabled him, the motions were denied. The special issues the insurer had prepared for submission to the jury were also refused and the court, in lieu thereof, submitted to the jury the special issues it had formulated along with its instructions as to the law. There were no objections or exceptions to any of these proceedings.

The jury, in answering the special issues submitted by the court, found that the insured *was not* retired under the policy definition; that the insured *was* totally disabled by the accident of May 26, 1963; that the insured was still disabled at the time of trial; and that the insured *did not* know or believe that he was making intentionally false statements which were material to the risk.

On appeal the insurer, claiming that there was no evidence from which the jury could find that the insured was not retired, that he was totally disabled and that he had not intentionally made false statements which were material to the risk, contends that the trial court should have ruled as a matter of law that the insured was not entitled to the benefits provided by the insurance. It is also contended that the court erred in refusing to submit the special issues requested by the insurer and in giving the instructions with respect to the special issues the court prepared and submitted to the jury.

The insurer, evidently on the supposition that the insured had neither an office for the practice of medicine nor a present or future prospect of employment as a doctor at the time he applied for disability insurance, contends that the insured was retired and that it was therefore entitled to a directed verdict. We do not agree. Not only does the argument ignore the fact that the insured was then on shore leave with a rapidly healing fractured left wrist and the further fact that the insured, at least in his own opinion, was then able to resume his duties aboard ship as a doctor, but overlooks the further fact that the policy defined the word "retired" as the permanent withdrawal from the full-time practice of medicine. The term "full-time" means the amount of time considered customary and standard. According to the record there was absolutely no evidence that the insured had permanently withdrawn from his full-time occupation as a ship's doctor. On the contrary there was ample evidence from which the jury could find, as it did, that the insured was not retired. Time after time we have held that in ruling on a motion for a directed verdict the facts should be considered in the light most favorable to the plaintiff and that the direction of a verdict in favor of a defendant is not justified if there is any evidence, however slight, legally sufficient to prove the plaintiff's case. *Stein v. Overlook Joint Venture,* 246 Md. 75, 227 A. 2d 226 (1967) ; *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231 (1966).

Next, the insurer, apparently because the insured had received no regular care and attendance for or on account of the Colles's fracture he sustained to his right wrist from the date of his last treatment at the hospital to the date of trial, contends that the insured was not totally disabled and for that reason it was entitled to a directed verdict. Again we disagree. Although "total disability" is defined as that which requires the regular care and attendance of a physician other than the insured as well as that which prevents the insured from performing his duties as a doctor, the policy also defines regular care and attendance as such treatment as is necessary for the condition which caused the disability. As to this, the record indicates, and there is no evidence to the contrary, that when the insured was last treated for the fractured right wrist in the hos-

pital in the latter part of April 1965, the doctors concluded, since his symptoms were unchanged and were unlikely to change, that his disability was permanent in nature and that further treatments would avail nothing. Under these circumstances, despite the fact that there was some evidence to the effect that the insured could practice some kinds of medicine, though not on board ship, and that some doctors engaged in practice with more serious disabilities than those of the insured, we think the case was properly submitted to the jury on this issue. There was adequate evidence from which the jury could find, as it did, that the insured was totally disabled by the injury he received and that such condition had not thereafter changed. See *Stein v. Overlook Joint Venture* and *Wood v. Johnson,* both *supra.*

Lastly, the insurer contends that its motions for a directed verdict should have been granted because the statements of the insured were, as a matter of law, false and material to the risk. Neither the cases nor the statute supports the contention.

Code (1964 Replacement Volume 5), Article 48A, § 374, provides in pertinent part:

"All statements and descriptions in any application for a * * * health insurance [1] policy, * * * by or on behalf of the insured * * *, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would * * * not have issued * * * the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in

---

1. Among other things, "Health Insurance" is defined by § 66 of Article 48A as "insurance of human beings against bodily injury, disablement, or death by accident or accidental means."

the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

While this Court, regardless of whether they were made in good or bad faith, has consistently recognized that the statements or representations of an applicant for insurance,[2] which are material either to the acceptance of the risk or the hazard assumed, can have the effect of voiding the policy of insurance, it has also held that an untrue statement does not nullify the policy of insurance unless the representation was made in bad faith or is related to a matter material to the risk or hazard undertaken. *Mutual Fire Ins. Co. v. Deale,* 18 Md. 26 (1861); *Mutual Benefit Life Ins. Co. v. Wise,* 34 Md. 582 (1871); *Schloss v. Metropolitan Life Ins. Co.,* 177 Md. 191, 9 A. 2d 244 (1939) and the earlier cases cited therein. Also see the more recent cases of *Silberstein v. Mass. Mutual Life Ins. Co.,* 189 Md. 182, 55 A. 2d 334 (1947); *Baker v. Continental Cas. Co.,* 201 Md. 464, 94 A. 2d 454 (1953); *John Hancock Mutual Life Ins. Co. v. Adams,* 205 Md. 213, 107 A. 2d 111 (1954); *Monumental Life Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103 (1957).

Also, as was said in *Commercial Cas. Ins. Co. v. Schmidt,* 166 Md. 562, 568-569, 171 Atl. 725, 728 (1934), as well as in *Schloss* (at p. 198) and *Taylor* (at p. 213), both *supra,* "[t]he question of materiality is not exactly whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk."[3] See also *Loving v. Mutual Life Ins. Co.,* 140 Md. 173, 117 Atl. 323 (1922).

The question in the instant case, however, is whether the issue of materiality should have been determined by the jury

---

2. In this respect, the courts, in construing contracts of insurance, make no distinction between fire, life, health, accident and other kinds of insurance. See American Casualty Co. v. Purcella, 163 Md. 434; Hankins v. Pub. Ser. Mut. Ins. Co., 192 Md. 68.

3. Also see Silberstein v. Mass. Mutual Life Ins. Co., 189 Md. 182 and John Hancock Mutual Life Ins. Co. v. Adams, 205 Md. 213.

or by the court. As to this, the cases uniformly hold that when bad faith or falsity or materiality is shown by clear and convincing or uncontradicted evidence, the question as to whether a representation is true or false or material to the risk is one for the trial court to decide as a matter of law, but when there is a conflict in the evidence, or the evidence is doubtful, the question is one for the jury to determine as the trier of fact. See *Monumental Life Ins. Co. v. Taylor, Baker v. Continental Cas. Co.,* and *Schloss v. Metropolitan Life Ins. Co.,* all *supra.* Also see *Heidenreich v. Metropolitan Life Ins. Co.,* 213 Md. 286, 131 A. 2d 914 (1957) ; *Union Trust Co. v. Kansas City Life Ins. Co.,* 300 F. 2d 606 (4th Cir. 1962).

The insurer defended this case on the theory that the insured had made material misrepresentations as to his health, freedom from physical impairment and full-time practice of medicine, but, other than some of the exhibits and the testimony on cross-examination of another medical expert — whose testimony, although corroborating that of the insured doctor, was not unfavorable to the insurer in some respects—there was no evidence to support the claim of the insurer that the representation was false and material to the risk. At most, it is apparent that the only effect of such adverse evidence as was produced would have been to cast some doubt on the otherwise clear and convincing testimony of the insured.

We think the court, in applying the law to the facts, properly submitted the case to the jury on this issue. There was much evidence from which the jury could reasonably find that the insured had not intentionally made false statements which were material to the risk. Indeed, as the insurer had limited the payment of benefits on impaired risks to $500 a month, the court could have directed a verdict in favor of the insured under Plan C and submitted to the jury a question only as to the liability of the insurer for additional payments of $250 a month under Plan B.

Due to the failure of the insurer, in conformity with Maryland Rules 560 b and 554 d and e, to make timely objections or exceptions to the adverse rulings of the trial court with respect to a directed verdict, the special issues prepared by itself

640

and the instructions of the court to the jury, we do not reach the remaining questions presented by the appeal.

*Judgment and order of court affirmed; appellant to pay the costs.*