## PEOPLES LIFE INSURANCE COMPANY *v.* JERRELL

[No. 239, September Term, 1973.]

*Decided May 1, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Kent D. Thorup* for appellant.

*Henry J. Noyes* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Peoples Life Insurance Company (Peoples) has appealed from a judgment for $10,000.00, the face amount of a policy of insurance on the life of Kenneth W. Jerrell, entered against it by the Circuit Court for Montgomery County (Shearin, J.) in favor of the beneficiary, Mildred E. Jerrell, mother of Kenneth, on a jury verdict.

Kenneth died on 26 April 1972, apparently as a result of a drug overdose. At the time of his death, his life was insured under three policies issued by Peoples: two for $500.00 each, one issued in 1954, when he was an infant, the other in 1969; and a third policy, for $10,000.00, which was applied for by his mother on 15 October 1970, and issued on 29 October with an effective date of 22 October. Peoples paid the two $500.00 policies, but declined to pay the $10,000.00 policy, relying on what it conceived to be a material misrepresentation in the application.

Maryland Code (1957, 1972 Repl. Vol.) Art. 48A, § 374 provides:

"All statements and descriptions in any application for a life or health insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

"(1) Fraudulent; or

"(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

"(3) The insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

As a result, although whether misstatements in an application are false and material to the risk are ordinarily questions of fact for the jury, *Cohen v. American Home Assurance Co.*, 255 Md. 334, 342, 258 A. 2d 225, 229 (1969), when the evidence is clear and convincing, or uncontradicted, the court may rule as a matter of law, *Continental Cas. Co. v. Pfeifer*, 246 Md. 628, 639, 229 A. 2d 422, 427, *cert. denied*, 389 U. S. 832 (1967); *Heidenreich v. Metropolitan Life Ins. Co.*, 213 Md. 286, 295, 131 A. 2d 914, 919 (1957); *Monumental Life Ins. Co. v. Taylor*, 212 Md. 202, 210, 129 A. 2d 103, 106-07 (1957); *John Hancock Mut. Life Ins. Co. v. Adams*, 205 Md. 213, 220, 107 A. 2d 111, 113-14 (1954); *Schloss v. Metropolitan Life Ins. Co.*, 177 Md. 191, 197-98, 9 A. 2d 244, 247 (1939) (numerous cases cited).

Peoples' contention is that since the evidence showed that Kenneth had a long history of drug addiction, which was not disclosed in the application, its motion for a directed verdict

should have been granted, and the case should not have gone to the jury.

Principal reliance is placed by Peoples on the testimony of Mrs. Jerrell. She testified that Kenneth was born in 1954; that she had taken out a $500.00 life policy when he was an infant and a second $500.00 policy in 1969. After the death of Mr. Jerrell in June, 1970, Mr. S. W. Ferrell, an agent for Peoples in Gaithersburg, suggested that Mrs. Jerrell increase the amount of insurance on Kenneth's life.

Mrs. Jerrell signed a printed application form, which she thought was completed by Mr. Ferrell. An examination of the form shows quite clearly that it was not completed by her. After the usual questions relating to Kenneth's date of birth, height, weight, and school attended, there were two significant questions which were answered in the following manner (emphasis supplied):

"7. Do *you* know of any impairment now existing in *your* health or physical condition? Yes☐; No☒. If yes, give particulars:
"8. Have *you* consulted a physician for any illness during the past three years? Yes☒; No☐. If yes, give particulars and dates: Dr. Hooper 10/2/70 Gaithersburg Md. sore Throat 1 visit Good"

Mrs. Jerrell was questioned about this on direct examination:

"Q. Did you have any discussion at all with Mr. Ferrell about any medical problem or about Kenny's general medical state?

"A. Mr. Ferrell had known Kenny had been oftentimes sick and had to go to the doctor with a sore throat."

\* \* \*

"Q. Did you have any further discussion with Mr. Ferrell as to what he would do as far as checking out Kenny's medical condition?

"A. He told me if the doctor who was his family doctor, Dr. Hooper would pass this, he would be back with the policy."

It would be well to note that the application which Mrs.

Jerrell signed was for a policy of term insurance, convertible to straight life at age 28, paid up at age 65. The application was cast in terms which might lead one to believe that Questions 7 and 8 were directed to Mrs. Jerrell, who signed as applicant for the policy. Apparently, she did not reach this conclusion, since her answers related to Kenneth.

The crux of the problem was that Kenneth had been admitted and treated for drug abuse at Suburban Hospital in 1968, and in 1969, at Montgomery General Hospital and again at Suburban Hospital. In addition, on the recommendation of the school psychiatrist, Kenneth had been hospitalized for about three months in 1969 or 1970 at Springfield State Hospital, which provides care for mentally ill patients from designated geographical areas of the State, including Montgomery County, 1973-1974 Maryland Manual 90 (1974).

Mrs. Jerrell assumed that Mr. Ferrell was aware of Kenneth's problems, because he was a friend of the family and the father of Kenneth's school mates. For these reasons, Mrs. Jerrell did not discuss Kenneth's situation with Mr. Ferrell at the time she completed the insurance application. It seems odd that Ferrell, for whom a summons had been issued by Peoples, could not be found, and that the record is silent on the question whether Dr. Hooper had been interviewed by Ferrell, as Mrs. Jerrell said she was led to expect.

It could well be that the manner in which Question 8 was phrased, and the limited space provided for a reply, could lead an applicant to conclude that it called for a disclosure of the most recent visit to a physician within a three-year period, and was not seeking any information regarding hospitalization, compare Continental Cas. Co. v. Pfeifer, supra with Nationwide Mut. Ins. Co. v. McBriety, 246 Md. 738, 230 A. 2d 81 (1967).

The only witness other than Mrs. Jerrell was William D. Winter, Peoples' chief underwriter of general agencies. The thrust of his testimony was that the application for insurance on Kenneth's life would have been declined had there been a disclosure that Kenneth had been hospitalized

for drug abuse, because such a circumstance would have been material to the risk assumed by Peoples, the policy being of the sort which is issued without a medical examination. During the cross-examination of Mr. Winter the following exchange occurred:

"Q. Will you insure a man if he uses drugs?

"A. No.

"Q. Then why don't you ask the question?

"A. We do not ask the question because we do not ask the agent to get that personal with an applicant. Could you name any applicant that would answer that truthfully anyway?"

＊ ＊ ＊

"Q. As a matter of fact, you would sell a whole lot less policies if you asked if they used drugs, would you not?

"A. If they answered it truthfully perhaps, yes."

Upon denial of Peoples' motion for a directed verdict, the case went to the jury on the question whether Mrs. Jerrell "made a material misrepresentation in the application." The jury was properly instructed that it might "consider whether the inquiry made of this applicant . . . through the means of this . . . application form was reasonably designed to elicit from the applicant the information which was material to the risk." *See Stumpf v. State Farm Mut. Auto. Ins. Co.*, 252 Md. 696, 707, 251 A. 2d 362, 367 (1969) ("The inquiry addressed to the applicant . . . must be reasonably designed to elicit from him the information which he possesses, material to the risk, as a condition precedent to the application of the rule that a failure to disclose may be a basis for the avoidance of the policy by the insurer."). Assuming that information as to drug abuse or prior hospitalizations was material to the underwriting risk, it would have been a simple thing to devise an application form which would develop such information, *Augusta Ins. & Banking Co. v. Abbott*, 12 Md. 348, 377 (1858). In our opinion, the jury was fully and fairly instructed, and although there

was a colloquy with counsel for Peoples, there was no formal exception taken to the instructions, Maryland Rule 554 d, e.

As we see the case, it cannot be said that Peoples' motion for a directed verdict should have been granted on the theory that there was a misrepresentation as a matter of law which barred Mrs. Jerrell's recovery.

If the application form prepared by an insurance company, and made a part of the contract, is ambiguous, it must be construed in a manner favorable to the policyholder, *C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.*, 264 Md. 510, 512, 287 A. 2d 238, 239 (1972); *H. R. Weissberg Corp. v. New York Underwriters Ins. Co.*, 260 Md. 417, 427, 272 A. 2d 366, 370 (1971); *Government Employees Ins. Co. v. De James*, 256 Md. 717, 720, 261 A. 2d 747, 749 (1970), and construction is a question for the jury, *C & H Plumbing & Heating, Inc. v. Employers Mut. Cas. Co.*, *supra*; *Vizzini v. Insurance Co. of N. America*, 260 Md. 626, 632, 273 A. 2d 137, 140 (1971); *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 610, 155 A. 2d 484, 488 (1959); *Eagle Star & British Dominions Ins. Co. v. Fleischman*, 175 Md. 433, 440, 2 A. 2d 424, 427 (1938); 22 J. Appleman, Insurance Law and Practice § 12853, at 7-8 (1947).

While it may seem that a somewhat Draconian result was reached, it may well have appeared to the jury that Mrs. Jerrell did not necessarily misrepresent or conceal facts material to the acceptance of the risk under the circumstances of this case. What happened here was that she failed to volunteer information which the jury, after hearing what little testimony there was, must have decided she had every reason to believe was not being inquired about, because she was told that the issuance of the policy would be conditioned upon the result of the agent's interview with Dr. Hooper, the family physician.

*Judgment affirmed, costs to be paid by appellant.*