Francis H. FOREMAN, Jr.

v.

**WESTERN RESERVE LIFE ASSURANCE COMPANY OF OHIO.**

**Civ. No. JFM–88–2940.**

United States District Court,
D. Maryland.

June 8, 1989.

Willie J. Mahone, Frederick, Md., for plaintiff.

J. Snowden Stanley, Jr., Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

---

## MEMORANDUM

MOTZ, District Judge.

Plaintiff Francis H. Foreman is the widower of Cheryl J. Foreman who died of a heart attack on August 24, 1985. He is suing Defendant Western Reserve Life Assurance Company of Ohio ("Western Reserve") for breach of contract in refusing to award him $30,000 under an insurance policy purchased by Mrs. Foreman. Defendant has moved for summary judgment on the ground that material misrepresentations made by Mrs. Foreman in her application justified rescission of the policy.[1]

## FACTS

During "open season" for government employees—a time when they may sign up for non-government-sponsored insurance plans—Mrs. Foreman met at least twice with John Krueger, a representative of Western Reserve, for the purpose of obtaining a life insurance policy. At the second meeting on August 24, 1984, Krueger read questions to Mrs. Foreman from an insurance application form. Based on Mrs. Foreman's response to these questions, Western Reserve decided to issue a $30,000 life insurance policy naming Francis Foreman as beneficiary. Western Reserve claims that Mrs. Foreman's responses contained misrepresentations that had a material impact on its decision to issue the policy. In particular, the defendant points to the following:

Question 25A: Has any proposed insured ever been a patient in any hospital, sanitorium or similar institution?

Answer: No.

Question 25B: Has any proposed insured had or been advised to have surgical operations, x-rays, blood studies or other tests in the last five years?

Answer: No.

Question 25C: Is any proposed insured on a diet or medication as prescribed by a physician, practitioner, hospital or clinic?

Answer: No.

Question 27: Has any proposed insured sought treatment or consulted a physician, for any reason in the last five years, including routine examinations or checkups?

Answer: Yes [Check-up. Results O.K.]

Question 28F: Has any proposed insured ever had, or been told by any physician or other practitioner that he or she has epilepsy, skull fracture, mental or nervous disorder?

Answer: No.

Question 28M: Has any proposed insured ever had or been told by any physician or other practitioner that he or she has within the last five years, any other physical or mental disorder, impairment, operation or injury not included in the above questions?

Answer: No.

Mrs. Foreman signed the application on page 3 under the following paragraph:

The undersigned represents that all statements and answers on pages One, Two and Three are made part of this application and that such are complete and true and correctly recorded to the best of my knowledge and belief.

The following chronology describes the deceased's actual medical history:

1972–1973 Visits to the Yater Clinic. (Also in 1985)

February 25, 1972 Visit to Yater Clinic. Check-up normal.

March, 1972 Visit to Yater Clinic. Gyn. check-up normal.

December 28, 1972 Foreman suffers seizure.

January 5, 1973 Visit to Dr. Silby at Neurology Center. Foreman describes seizure that occurred in December, 1972.

October 8, 1973 Visit to Yater Clinic. Note made of convulsive seizure in December, 1972.

October 16, 1973 Visit to Yater Clinic. Fertility check-up.

December, 1975 Foreman blacks out.

---

**1.** This court has already granted Defendant's Motion for Summary Judgement on plaintiff's claims for bad faith and punitive damages.

January, 1976  EEG performed.

April 26, 1977  Neurological exam. Results normal.

August 2, 1979  Admitted to George Washington Univ. Hospital after two seizures characterized by tongue-biting and incontinence. Doctor noted history of seizures since 1965, previous prescription of Dilantin. Prescribed Dilantin.

April 1, 1982  Visit to Dr. Sievers who notes, "Petite mal seizure yesterday." At this first session, Foreman filled out a "Prior Medical History" form. In response to the request that she "check the appropriate box for any of the following symptoms which you now have or have had previously," Foreman checked boxes indicating "convulsions", "fatigue", and "epilepsy." On the same form, Mrs. Foreman noted that her major complaint was "Epilepsy—last one is yesterday."

April 3, 1982  Visit to Dr. Sievers who notes, "Another petite mal during argument."

April 5, 1982  Visit to Dr. Sievers.

April 12, 1982  Dr. Sievers notes, "Had seizure next day" (meaning day after previous visit).

May 14, 1982  Dr. Sievers notes, "Had seizure last nite [sic] and today...."

July 11, 1983  Admitted to G.W. Univ. Hospital for seizure. Dilantin prescribed. Doctor notes describe her as "epileptic."

October 24, 1983  Admitted to Shady Grove Hospital for check-up after seizures. Doctor notes, "epileptic."

1985  More visits to Yater Clinic. Records indicate deceased had been given phenobarbital and Dilantin in the past to treat seizure disorder.

## I.

The first issue which must be resolved is whether the summary judgment record establishes that the answers given by Mrs. Foreman were, in fact, false.

*Question 25A* to which Mrs. Foreman responded "No," asked whether she had ever been a patient in any hospital. Plaintiff argues that in Mrs. Foreman's mind a visit to the hospital to receive treatment followed by same-day release—i.e., status as an "outpatient"—was something different from being "a patient in a hospital" and thus, her answer "NO" to this question was truthful. It cannot be said that, as a matter of law, such an interpretation of the question would have been unreasonable. Indeed, where there is ambiguity about some aspect of an application, courts have held that it must be construed in the policyholder's favor. *Peoples Life Insur. Co. v. Jerrell*, 271 Md. 536, 318 A.2d 519 (1974), *Fitzgerald v. Franklin Life Insur. Co.*, 465 F.Supp. 527 (D.Md.1979). Thus, at the least, a genuine issue of material fact is presented as to Question 25A.

*Question 25B* asked if Mrs. Foreman had "had *or* been advised to have surgical operations, x-rays, blood studies or other tests in the last five years." (emphasis added) Plaintiff contends that Mrs. Foreman's response of "NO" was truthful because, even though "there is evidence of tests by Dr. Sievers, ... the record does not indicate that she was advised to have any such tests." Plaintiff's Opposition Brief at pp. 8–9. This, simply, is a non-argument. By its plain unambiguous language, Question 25B dictates that a person who has *had* tests is under the same obligation to answer "YES" as one who has been *advised* to have them. Thus, Mrs. Foreman's response was a clear misrepresentation of the truth.

*Question 25C* asked, "*Is* [Mrs. Foreman] on a diet or medication as prescribed by a physician, practitioner, hospital or clinic?" (emphasis added) Defendant argues that because Mrs. Foreman had been prescribed Dilantin and phenobarbital repeatedly and because she had been advised to follow a macro-biotic diet, her "NO" response to this question was a misrepresentation. Plaintiff's response is that the phrasing of the question (to wit, "is") directed Mrs. Foreman to prescriptions at the time of application and that there is no evidence that in August, 1984 she was under medication. This is a genuine ambiguity which,

at the least, would require a jury finding on the issue of falsity.

*Question 27* asked whether in the previous five years Mrs. Foreman has sought treatment or consulted a physician, including routine examinations or check-ups. After responding "YES" to this question, Mrs. Foreman volunteered information that is evidenced in the "Notes" portion of the application. There, Krueger, the Western Reserve agent, wrote:

#24 SAW GYN 12-82 FOR
#27 CHECK. UP.
RESULTS OK

Defendant contends that Mrs. Foreman's failure to inform the agent of the numerous other examinations and treatments she had undergone in this five year period was a material omission within the meaning of the Maryland Code Annotated, Article 48A § 374. The only possible scenario under which Mrs. Foreman's response could be legitimated is that Krueger initially wrote #24 and #27 in the note section to remind himself to come back later and ask for details and then remembered to come back to #24 but not to #27. However, that explanation is flatly refuted by Krueger's uncontradicted affidavit which states:

In response to Question 27 of the application Mrs. Foreman denied that she had sought treatment or consulted a physician during the period between August 14, 1979 and August 14, 1984, except for one visit to a gynecologist.

*Question 28F* asked whether Mrs. Foreman has "ever had, or been told by any physician or other practitioner that ... she has epilepsy, skull fracture, mental or nervous disorder?" Defendant asserts that, in light of her recurring seizures, Mrs. Foreman's "NO" response to this question was a misrepresentation. In response, plaintiff relies upon his recollection, to which he testified on deposition, that during the August 24th meeting between Krueger and his wife (at which he was present), Krueger was advised that Mrs. Foreman had experienced seizures but had not been diagnosed as having epilepsy. According to Mr. Foreman, Krueger advised his wife to answer the questions "no." Assuming that Mr.

Foreman's recollection is accurate, his explanation of what occurred itself suggests that Mrs. Foreman was less than candid since on a "Prior History Form" which Mrs. Foreman filled out on her first visit to Dr. Sievers, she referred a number of times to her condition as "epilepsy." However, because the record does not conclusively establish that Mrs. Foreman thus characterized her condition based upon something which she had been told by a physician or other practitioner, a jury issue arguably is presented on the falsity of the response to Question 28F.

The response to *QUESTION 28M,* however, presents no such issue. That question asked whether Mrs. Foreman had any other physical or mental disorder, impairment, operation or injury not included in the other questions which had been asked. Whatever justification may have existed for not answering Question 28F affirmatively did not extend to failing to mention Mrs. Foreman's seizures in response to this question.

## II.

The next issue to be decided is whether the misrepresentations contained in the answers to Questions 25B, 27 and 28M were material to Western Reserve's decision to issue a policy to Mrs. Foreman. Under Maryland Code Ann. Art. 48A, Section 374(3) a misrepresentation is material if "the insurer in good faith would either not have issued ... the policy ... or would not have issued a policy ... at the same premium or rate ... if the true facts had been known to the insurer as required either by the application for the policy ... or otherwise." Some misrepresentations "may be so obvious" that they are material as a matter of common law. *See Fitzgerald v. Franklin Life Ins. Co.,* 465 F.Supp. 527 (D.Md.1979); *Hofmann v. John Hancock Mutual Life Ins. Co.,* 400 F.Supp. 827 (D.Md.1975); *Union Trust Co. v. Kansas City Life Ins. Co.,* 300 F.2d 606 (4th Cir. 1962); *Metropolitan Life Ins. Co. v. Samis,* 172 Md. 517, 192 A. 335 (1937).

Here, the misrepresentations made by Ms. Foreman concealed her history of sei-

zures and the medical treatment which she had received therefor. An affidavit submitted by Richard Isenhour, Western Reserve's Vice President in charge of underwriting and new business, establishes that if Western Reserve had known of Mrs. Foreman's history of seizures, it would not have issued any policy without first obtaining a full report from her treating physicians of her history, condition, diagnosis and prognosis. Further, Mr. Foreman has stated that if the information contained in Mrs. Foreman's medical records "had been available to Western Reserve on the date that the decision was made to issue the policy, under the underwriting standards in effect at the time, the policy would not have been issued, or had it been issued, would have been rated at at least 200%." Mr. Isenhour's averments are uncontradicted, and they establish that Mrs. Foreman's misrepresentations were material as a matter of law both under Section 374(3) and under the common law standard of obviousness.

### III.

Plaintiff's final argument is that he should not be held accountable for his wife's responses to Questions 25B, 27 and 28M because they did not reflect what she actually said to Krueger. Assuming this fact to be true for purposes of defendant's summary judgment motion, the law is settled that where the insured has an opportunity to read over the policy before signing and then signs it, he represents that what has been recorded is true and is legally responsible for any material misrepresentations. Thus, in *Serdenes v. Aetna Life Ins. Co.*, 21 Md.App. 453, 461, 319 A.2d 858, 863 (1974), the Court stated: "it is immaterial that it is the agent who inserts false statements about material matters in an application, because if the assured has a means to ascertain that the application contains false statements, he is charged with the misrepresentations just as if he had had actual knowledge of them and was a participant therein." *See also Nationwide Mutual Ins. Co. v. McBriety*, 246 Md. 738, 230 A.2d 81 (1967).

A separate order is being entered herewith granting defendant's motion for summary judgment.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 8th day of June 1989

ORDERED

1. Defendant's motion for summary judgment is granted; and

2. Judgment is entered in favor of defendant against plaintiff.