Rebecca A. BRYANT

v.

**PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY.**

Civil No. Y–97–1884.

United States District Court,
D. Maryland.

Oct. 7, 1998.

John E. Sutter, Charleston, WV, for Plaintiff.

Bryan D. Bolton, Baltimore, MD,; James F. Taylor, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgment. Plaintiff, Rebecca A. Bryant, seeks a declaration that three disability insurance policies rescinded by the Defendant, Provident Life and Accident Insurance Company [hereinafter "Provident"], are not rescindable and are in full force and effect. Provident argues it rightfully rescinded the policies due to Ms. Bryant's alleged material misrepresentation on her application for reinstatement of the policies.

In 1991, Provident issued three disability insurance policies to Bryant. On September 1, 1993, the policies lapsed due to Bryant's nonpayment of the premiums. In order to reinstate her insurance, Bryant signed reinstatement applications for the three policies on December 1, 1993. All three applications asked Bryant whether "to your knowledge, have you had any departure from good health or change in physical condition in the past two years." On all three applications, Bryant answered, "no." Provident avers that Bryant's answer to this question constitutes a material misrepresentation. Provident argues that Bryant did have a change in physical condition in the past two years

It is undisputed that Bryant had four visits with a physician, Dr. Kopelove, in the four months immediately preceding her reinstatement application. Bryant had been menstruating excessively for about four months and had been to the hospital due to the bleeding. She had been discharging large blood clots, experienced difficulties standing up, was out of breath, and had almost passed out. Dr. Kopelove prescribed Lupron injections for Bryant. Over the next couple of months, Bryant experienced severe sleep problems, anxiety or stress fatigue, cognitive dysfunction, joint and muscle pain, severe mood swings, hot flashes, slurred speech and felt out of control. Bryant continued to see Dr. Kopelove at additional appointments on September 9, 1993, September 10, 1993, and November 8, 1993. In a letter to Johns Hopkins Hospital, Bryant wrote that prior to fall 1993, she "had always been a high energy person who worked long hours and participated in many different types of work and play outside the office."

Provident argues these symptoms constitute a change in physical condition that should have been reported on the reinstatement applications. Bryant argues that the cause of her condition in 1993 was uterine fibroids that were preexistent for more than two years. Bryant argues that the new symptoms are merely side effects of the Lupron injections.

On January 30, 1996, Provident notified Bryant of its tentative decision to rescind the policies due to material misrepresentation on her reinstatement application. In March 1996, after receiving no response from Bryant, Provident rescinded all three policies. Provident returned to Bryant the premiums paid for the policies on or after December 1, 1993.

### I.

Summary Judgment may be granted in a civil case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court must consider the facts and draw any inference in the light most favorable to the nonmoving party. *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a motion for summary judgment is properly made and supported, the burden shifts to the opposing party to show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because there are no genuine disputes as to any material facts, this case is ripe for summary judgment.

## II.

■ "The general rule in this area of the law is that a material misrepresentation in the form of an incorrect statement in an application invalidates a policy issued on the basis of such application." *Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527, 534 (D.Md.1979), *aff'd*, 634 F.2d 622 (4th Cir. 1980). The insurer may rescind the policy regardless of whether the material misrepresentation is made intentionally, or through mistake and in good faith. *Id.*

The Court is to conduct a two-pronged inquiry to determine whether the insurer may validly rescind the policy. *Id.* The first prong asks whether a misrepresentation occurred. *Id.* The second prong asks whether the misrepresentation was material to the risk assumed by the insurer. *Id.* at 535.

### A.

■ The issue that first must be determined is whether the summary judgment record establishes that the answer given by Bryant was false. *Foreman v. Western Reserve Life Assur. Co. of Ohio*, 716 F.Supp. 879, 881 (D.Md.1989), *aff'd*, 898 F.2d 145 (4th Cir.1990). When the falsity of a representation made by an applicant for insurance is shown by clear and convincing or uncontradicted evidence, the determination as to whether the representation was false is one for the Court. *Continental Cas. Co. v. Pfeifer*, 246 Md. 628, 639, 229 A.2d 422, 427 (1967).

"In Maryland insurance policies ordinarily are construed in the same manner as contracts generally" and are not "construed most strongly against the insurer." *Collier v. MD–Individual Practice Ass'n, Inc.*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992) (citing *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135, 1138 (1989)). "Words are accorded their ordinary and accepted meanings. 'The test is what meaning a reasonably prudent layperson would attach to the term.'" *Id.* at 5–6, 607 A.2d 537, 327 Md. 1, 607 A.2d 537, 539 (quoting *Pacific Indem. Co v. Interstate Fire & Casualty Co.*, 302 Md. 383, 388, 488 A.2d 486, 489 (1985)).

■ In a letter to Johns Hopkins Hospital dated April 27, 1995, Bryant wrote that she had experienced the following symptoms *beginning in fall 1993:* severe sleep problems, severe mood swings, generalized anxiety or stress fatigue, cognitive dysfunction, joint and muscle pain, general weakness and asthenia.

Bryant began experiencing numerous ailments in fall 1993. These ailments involved her physical condition and were changes because they were not previously present. Accordingly, Bryant's representation that she did not have "any change in physical condition" was a misrepresentation according to the ordinary and plain meaning of the terms.

### B.

The second prong asks whether the misrepresentation was material to the risk assumed by the insurer. *Fitzgerald*, 465 F.Supp. at 535. Provident argues that Bryant's misrepresentation is material within the meaning of the Annotated Code of Maryland of 1957, Article 48A § 374. Under Md. Ann.Code of 1957, Art. 48A, Section 374(3) there is a material misrepresentation if "the insurer in good faith would either not have issued ... the policy ... or would not have issued a policy ... at the same premium or rate ... if the true facts had been known to the insurer as required either by the application for the policy ... or otherwise."

The Maryland Court of Appeals defined "materiality" as:

A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against.

*Fitzgerald*, 465 F.Supp. at 535 (citing *Hofmann v. John Hancock Mutual Life Ins. Co.*, 400 F.Supp. 827, 829 (D.Md.1975)) (quoting *Metropolitan Life Ins. Co. v. Samis*, 172 Md. 517, 192 A. 335 (1937)). The Maryland Court of Appeals has also described the test for materiality as whether the false representation "'would reasonably influence the insurer's decision as to whether it should insure the applicant.'" *Id.* (quoting *Silberstein v.*

*Massachusetts Mutual Life Ins. Co.,* 189 Md. 182, 190, 55 A.2d 334, 339 (1947)).

"Traditionally, minor ailments and consultations with doctors for treatment of minor ailments are deemed not to be material to the risk assumed by the insurer." *Id.* "If the undisclosed ailment is not minor, the question of materiality is at issue and is normally one of fact for the jury to decide ... However, the materiality of the misrepresentation to the risk may be so obvious that the Court must rule as a matter of law that the misrepresentation is material." *Id.* at 535–36.

■ Where the materiality of a misrepresentation to the risk is clear, the court may resolve the issue as matter of law. *Id.* at 535. *See Continental,* 246 Md. at 639, 229 A.2d at 427. "Whenever in any case it is manifest, from uncontradicted testimony or from the nature of the misrepresentation, that they (the misrepresentations) have been material to the risk, the court is so to rule as a matter of law." *Hofmann,* 400 F.Supp. at 830 (quoting *Commercial Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725, 728 (1934)). "Some misrepresentations 'may be so obvious' that they are material as a matter of common law." *Foreman,* 716 F.Supp. at 882 (citing *Fitzgerald,* 465 F.Supp. 527, *Hofmann,* 400 F.Supp. 827, *Union Trust Co. v. Kansas City Life Ins. Co.,* 300 F.2d 606 (4th Cir.1962); *Metropolitan Life Ins. Co. v. Samis,* 172 Md. 517, 192 A. 335 (1937)). "A finding of materiality as a matter of law has not been uncommon in Maryland case law." *Fitzgerald,* 465 F.Supp. at 536.

The *Hofmann* court set forth five factors to consider in making a materiality determination. *Id.* (citing *Hofmann,* 400 F.Supp. at 830–34). Those factors are:

1. "the nature of the undisclosed ailment"

2. "the extent of nondisclosure of medical visits"

3. "the contrast between disclosed ailments and visits and nondisclosed ones"

4. "the relationship between the nondisclosed ailment(s) and the cause of death" and

5. "the present posture of the case."

*Id.* (citing *Hofmann,* 400 F.Supp. at 830–34).

■ The first factor to consider is the nature of the undisclosed ailment. In determining materiality, the "medical information need not support a clinical diagnosis of a certain disease or illness." *Id.,* at 538. It is the symptoms reported and test results that are the focus of the materiality inquiry, not a clinical diagnosis. *Id.* Bryant failed to disclose, *inter alia,* that she suffered from cognitive dysfunction. Clearly, cognitive dysfunction is relevant to Bryant's ability, or inability, to perform her professional duties as a lawyer. Accordingly, due to the nature of this ailment, it should have been disclosed.

The second factor to consider is the extent of nondisclosure of medical visits. In *Fitzgerald,* the court determined that the insured's nondisclosure of certain medical visits constituted a material misrepresentation because the visits were too substantial in their examination and testing and too long in duration to be considered routine checkups. *Id.* at 539. The *Fitzgerald* court cited continual treatment as evidence supporting the materiality of the undisclosed information. *Id.* In the instant case, Bryant had four appointments with Dr. Kopelove in the four months immediately preceding her reinstatement application. These visits were continual and substantial in nature. Accordingly, Bryant should have disclosed these visits.

The third factor to consider is the contrast between disclosed ailments and visits and nondisclosed ones. Because Bryant disclosed nothing, there is no basis for comparison. However, regardless of whether Bryant had any other ailments or visits to disclose, there is no indication that Bryant attempted to selectively report certain ailments or visits and not others.

■ The fourth factor to consider is the relationship between the nondisclosed ailment(s) and the cause of the disability. Because the instant case involves disability insurance, and not life insurance as in *Hofmann,* the relevant factor is the cause of the disability, not death. The court is to consider the connection between the nondisclosed ailment and cause of the claimed dis-

ability. The more closely related they are, the more material the misrepresentation is. However, the undisclosed ailment need not be the leading cause of disability for it to be deemed material. *Hofmann*, 400 F.Supp. at 834. A contributing cause is sufficient. *Id.* In the instant case, the ailments Bryant declined to report are the same ailments that, according to Bryant's Notice of Claim, ultimately caused her disability. Accordingly, her nondisclosure of those ailments is highly material.

The fifth factor is the posture of the case. The case is currently on Motion for Summary Judgment. "The most·important factor in deciding whether the issue should go to the jury is a conflict in testimony." *Fitzgerald*, 465 F.Supp. at 540. In the instant case, there is no conflict in testimony. The only potential conflict is whether Bryant's symptoms constitute side effects. Even if the symptoms suffered by Bryant were merely "side effects" of the Lupron injection, she has no means of proving this in court. Bryant failed to submit any expert witnesses. Bryant is herself unqualified to provide expert testimony. Accordingly, there would be no evidence on which a jury could find that her symptoms were indeed side effects. Thus, there is no conflict in testimony. The posture of the case lends itself to a finding of materiality as a matter of law.

As a final consideration, the *Hofmann* court looks to the balancing of the equities. *Hofmann*, 400 F.Supp. at 834. "[T]he equities in this case would seem to call for the granting of summary judgment. The Defendant is sure to prevail ... Perhaps the most equitable thing to do in this situation would be to grant summary judgment and spare the Plaintiff the unnecessary expense and agony of a trial." *Id.* at 835.

An uncontradicted affidavit of the insurer that a policy would not have been issued had it known of the insured's medical history can establish materiality as a matter of law. *Foreman*, 716 F.Supp. at 883. In late December 1995, Provident's claim department submitted Bryant's medical records to the underwriting department and queried whether the disability insurance coverage would have been reinstated as applied for by Plaintiff. Provident's underwriting department responded that coverage would not have been reinstated, stating "had we known of the medical history prior to the app. date of 12–1–93 we would not have reinstated any coverage." The uncontradicted evidence shows that Bryant's misrepresentation is material as a matter of law both under Article 48A, § 374 and under the common law standard of obviousness. *See Foreman*, 716 F.Supp. at 883.

### III.

In summary, the Court finds that a misrepresentation occurred and that it was material to the risk assumed by the insurer as a matter of law. Based on the foregoing analysis, the Defendant's Motion for Summary Judgment is hereby granted.

### ORDER

In accordance with the attached Memorandum, it is this 7th day of October 1998, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That judgment BE, and the same hereby IS, ENTERED in favor of the Defendant; and

3. That copies of this Memorandum and Order be mailed to counsel for the parties.