Bernard A. BAND, M.D., Plaintiff,

v.

**PAUL REVERE LIFE INSURANCE COMPANY, Defendant.**

No. 99–404.

United States District Court,
D. Maryland.

April 27, 2000.

Bryan D. Bolton, James Taylor, Funk & Bolton, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

The parties before the Court are Bernard A. Band. M.D. (hereinafter "Plaintiff") and Paul Revere Life Insurance Company (hereinafter "Defendant"). Plaintiff moves for summary judgment on its breach of contract claim alleging that Defendant failed to pay him 48 months of disability benefits as specified under an insurance policy. Defendant filed a cross-motion for summary judgment contending Plaintiff is ineligible for 48 months of disability benefits because Plaintiff misstated his age on his initial application, thereby making him eligible for only 42 months of disability payments. Plaintiff's request for a hearing will be denied as it is not deemed necessary. *See* Local Rule 105.6 (D.Md.). For the reasons discussed below, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross-motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This action concerns a disability insurance policy (hereinafter "Policy") issued by Defendant to Plaintiff in February 1990. Defendant issued the Policy after receiving a handwritten application memorializing Plaintiff's oral statements. Defendant's agent, Mr. Kevin Tumey, recorded the necessary information for the policy application during an interview with Plaintiff. Thereafter, Tumey typed the application and submitted it to Defendant. Tumey incorrectly recorded the Plaintiff's birth date as August 24, 1933 when in fact the Plaintiff's birth date is August 24, 1932. While Defendant ultimately decided whether to issue the Policy based on Plaintiff's application, it also relied on the underwriter's evaluation results which included Plaintiff's correct birth date: August 24, 1932. The insurance policy at issue incorporates the "application" in its entirety without particular reference to the handwritten or typed applications.

Policy benefits are determined by the birth date of the insured. The Policy provides that if the insured becomes disabled before his 62nd birthday but after his 61st birthday, he is entitled to 48 months of disability insurance benefits. *See* Policy, Plaintiff's Exhibit 1. However, if the insured becomes disabled after his 62nd birthday but before his 63rd birthday, he is entitled to only 42 months of benefits. Plaintiff became disabled on December 21, 1994, at the age of 62. Under the Policy and the incorporated application, he was entitled to 48 months of benefits. According to Plaintiff's correct birth date, however, he was entitled to only 42 months of benefits. Sometime in June 1997, Dr. Band sought confirmation as to when his benefit period would expire by calling Defendant and informing an agent that the birth date on the policy was incorrect and asking whether his benefits would be adjusted. Defendant informed Plaintiff that he would be sent a letter with the correct information regarding his benefits entitlement under the Policy. In a letter dated June 12, 1997[1], Defendant stated that Plaintiff was entitled to benefits until March 21, 1999, or 48 months of disability benefits, meaning Plaintiff would receive benefits as if he was born August 1933, his incorrectly recorded birthday. *See* Plaintiff's Exhibit 7. As a result, Plaintiff took additional time off from work as prescribed by his physician, believing he

1. The Court notes that the letter is not on letterhead and does not contain a signature or a name of an agent of the Defendant. Defendant, however, does not dispute the fact that it sent the letter to Plaintiff. Also, the letter makes reference to the telephone conversation Plaintiff had with Defendant's agent.

would continue to receive disability payments until March 1999 as stated in the letter.

Defendant sent another letter dated March 2, 1998 to Plaintiff, acknowledging that the letter dated June 12, 1997 contained mistakes. In the March 1998 letter[2], Defendant acknowledged its mistake and attempted to correct the situation by stating:

> In order to be of service to you for any inconvenience caused by your belief that your benefits would be paid to March 21, 1999, please find a check in the amount of $30,047.27 which represents $26,827.92 in Base Benefits plus Cost of Living.

*See* Plaintiff's Exhibit 9. This amount submitted to Plaintiff allowed him the maximum monthly amount under the Policy for the duration of the coverage period, but did not extend the coverage to 48 months. The letter concludes by informing Plaintiff that his disability payments would end by September 1998, allowing him 42 months of disability insurance, the amount he would receive considering his correct age.[3] On April 29, 1998, Plaintiff's attorney, H. Kenneth Armstrong, sent a letter to Defendant stating Plaintiff was entitled to 48 months of benefits he was promised in the June 1997 letter, whereby Plaintiff's benefits would cease on March 21, 1999. *See* Plaintiff's Exhibit 10. In the April 1998 letter, Plaintiff relies on the "Incontestable Clause" of the policy which provides:

> a. After your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application.

Policy, at Section 10.2. Although the Policy includes a definition section, it does not state whether age is considered a statement in the policy that is covered by the Incontestable Clause. Plaintiff argues that this provision of the policy is in conflict with the "Misstatement of Age" provision of the Policy which reads:

> If your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

Policy, at Section 9.9. In a letter dated May 11, 1998, Defendant explained that the Misstatement of Age provision overrides the Incontestable Clause, and that Defendant would only pay Plaintiff 42 months of benefits. The last paragraph, however, of this May 1998 letter, which is at the center of this dispute, provides:

> In addition, the contract also contains a Misstatement of Age Provision Section 9.9 which states, if your age has been misstated, the benefits under the policy would be those that the premium you paid would have purchased at your correct age. **Please understand that we waive this provision in the insured's favor and we will not pursue this issue.**

Plaintiff's Exhibit 11 (emphasis added). The Defendant provides no explanation for this statement in the record.

On January, 13, 1999, Plaintiff filed a complaint in the Circuit Court for Montgomery County, Maryland for breach of contract. Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441 as the policy at issue is governed by the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(1)(B), which authorizes a beneficiary of an employee welfare benefit plan to recover benefits due to him and other appropriate equitable relief. At all times material to this action, Plaintiff was covered under a disability insurance policy issued by Defendant and established and maintained by Drs. Band, Badway & Goodridge, P.A. (employer) for the purpose of providing employees with Policy benefits

---

**2.** This letter, presented to the Court as Plaintiff's Exhibit 9, does not appear on any visible letterhead, but contains the name of Roger Trahan, an agent of the Defendant. Defendant does not dispute that it sent the letter.

**3.** On its face, this letter appears to be an unofficial settlement by the Defendant to compensate Plaintiff for the mistake it made in its June 1997 letter.

in the event of a disability. The Policy is an employee welfare benefit plan within the meaning of ERISA. *See* 29 U.S.C. §§ 1002(1). Defendant filed a counter-claim and an amended counter-claim for reimbursement of funds it allegedly overpaid Plaintiff. Both parties now move for summary judgment on their respective claims.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material facts exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of a nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted). In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-mov-ant. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. Motions for Summary Judgment

### A. Standard of Review—*De novo*

■ The Court reviews this benefits claim decision *de novo.* Under the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), this Court is to review Defendant's decision on Plaintiff's claim for benefits under a *de novo* standard, "unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. The Policy at issue does not contain any language that confers discretion on Defendant to determine eligibility for benefits or to construe the terms of the Policy. Thus, the standard of review is *de novo.* Under *de novo* review, the Court interprets an ERISA insurance policy using the "ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir.1995) (*citing Hardester v. Lincoln Nat'l Life Ins. Co.*, 33 F.3d 330, 338 (4th Cir.1994)). Therefore, this Court will review the decision *de novo,* applying basic principles of contract law. The material facts are not in dispute, and thus, the Court focuses on which party should prevail as a matter of law.

### B. Misstatement of Age Provision v. Incontestable Clause

■ The first issue to resolve is whether the Misstatement of Age Provision overrides the Incontestable Clause or whether the Incontestable Clause overrides the Misstatement of Age Provision. The Plaintiff asserts that the Misstatement of Age Provision is barred by the Incontestable Clause. Plaintiff argues that no statement in the contract or application can be contested including the age because the Incontestable Clause bars any contest of statements in the policy if the policy has

been in force for two years or more. The Incontestable Clause becomes effective on the date the policy was issued—February 1990. Defendant asserts that the Misstatement of Age Provision overrides the Incontestable Clause and gives Defendant the right to change the Plaintiff's age on the contract and pay him the benefits he would have received under his correct age. Defendant cites relevant Maryland statutes that provide that the Incontestable Clause is limited by the Misstatement of Age provisions. *See* MD CODE ANN. (Insurance) § 15–208(a) and (b)(2). The Code provision entitled "Time limit on specified defenses" provides:

(a) Two-year limit on misrepresentation.—[E]ach policy of health insurance shall contain the following provision:

"Time limit on certain defenses: (1) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period."

(b) Effect of provision—The first provision set forth in subsection (a) of this section does not:

(1) affect a legal requirement for avoidance of a policy or denial of a claim during the initial two-year period after the issuance of the policy or

(2) limit the application of §§ 15–219 through 15–223 of this subtitle if there is a misstatement with respect to age, occupation, or other insurance.

MD CODE ANN. § 15–208. The Maryland Code provides that the Misstatement of Age Provision is not barred by the Incontestable Clause. *Id.* In light of the statute, the Court finds that the Incontestable Clause is barred by the Misstatement of Age Provisions in policy disputes. The Court believes that the Maryland statute applies to this case involving the overlapping contract provisions. Whenever the insured's age has been misstated in the contract or the incorporated application,

the insurer under the statute has the right to correct the age and pay the insured according to his correct age. Therefore, the Misstatement of Age Provision overrides the Incontestable Clause, and Plaintiff cannot prevail on this basis.

## C. Waiver and Estoppel

Plaintiff also asserts a waiver and estoppel argument in support of its summary judgment motion on its breach of contract claim, arguing that the letter sent to Plaintiff by Defendant dated May 11, 1998 constituted a waiver of the Misstatement of Age Provision of the insurance policy. Moreover, Plaintiff asserts that if the Court finds Defendant has not waived the Misstatement of Age Provision of the contract, Defendant is estopped from asserting its contractual rights because Plaintiff has relied on the promise that Defendant made to Plaintiff's own detriment. Defendant argues that the doctrines of waiver and estoppel are not recognized options for Plaintiff because the Fourth Circuit has rejected the application of federal common law principles of waiver and estoppel to ERISA claims, and the Fourth Circuit does not apply Maryland's doctrine of waiver or estoppel. Defendant further asserts that Plaintiff does not meet the elements of either waiver or estoppel. The Court concludes that both principles apply to the instant case to support Plaintiff's claim for relief.

 While the Fourth Circuit interprets an ERISA plan under various federal common law principles, it may use principles of state common law to guide its analysis in ERISA cases. *See Wheeler,* 62 F.3d at 638. The common law principle of waiver is defined as "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. . . . And acts relied upon as constituting a waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing

such provisions." *Rubinstein v. Jefferson Nat'l Life Insurance Co.*, 268 Md. 388, 392–93, 302 A.2d 49, 52 (1973) (*quoting Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166, 172 (1964)). Whereas estoppel, also known as "promissory estoppel"[4], is defined as the common law principle that can be asserted when the party asserting its benefit has "been misled to his injury" and has "changed his position for the worse, having believed and relied on the representations of the party sought to be estopped." *Rubinstein*, 302 A.2d at 52 (citations omitted). Promissory estoppel involves the making and subsequent breaking of a promise. *See Elmore v. Cone Mills Corp.*, 23 F.3d 855, 867 (4th Cir.1994). Promissory estoppel allows recovery even in the absence of consideration for the promise. *See Allen M. Campbell Co., General Contractors, Inc. v. Virginia Metal Indus., Inc.*, 708 F.2d 930, 931 (4th Cir.1983). Although the doctrines of waiver and estoppel are often used interchangeably, the primary distinction between the two is that "waiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated." *See Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). The consequences of applying these doctrines is to disqualify the defenses asserted by Paul Revere.

■ As a general rule in the Fourth Circuit, the federal common law doctrines of waiver and estoppel do not apply to ERISA contracts. *See White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26,29 (4th Cir.1997); *HealthSouth Rehabilitation Hospital v. American Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir.1996) (declining to apply estoppel to support an *oral* modification of an ERISA plan) (emphasis added). The Court understands that other circuits have applied the doctrines to ERISA claims, or left open the question of whether they apply. *See e.g., Pitts*, 931 F.2d at 357–58 (recognizing waiver as a viable claim under ERISA); *Thomason v. Aetna Life Insurance Co.*, 9 F.3d 645, 647–49 (7th Cir.1993) (leaving open the question of whether the federal common law doctrines apply); *Glass v. United of Omaha*, 33 F.3d 1341, 1348 (11th Cir.1994) (same). Although ERISA is "a comprehensive statute designed to federalize the regulation of employee welfare benefit plans," the federal courts are expected to fill in any gaps with a "federal common law of rights and regulations under ERISA-regulated plans." *Glass*, 33 F.3d at 1347 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

Despite the Fourth Circuit's general rulings regarding the applicability of the doctrines, which are contrary to those in other circuits, the Court finds that this case qualifies for an exception contemplated by the Fourth Circuit. In *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir.1997), the Court appears to leave open the possibility that the doctrines may apply in cases in which the record included something beyond mere oral assurances or promises by the insurer. In *White*, the plaintiff executed an "application for Conversion of Group Life Insurance to an Individual Life Insurance Policy" seeking to convert his coverage under the group policy to individual coverage. The group policy provided that an insured may not

---

4. Plaintiff uses the term "estoppel" throughout his motion. The Court however, recognizes that the doctrine to which he refers is more specifically known as "promissory estoppel." "[P]romssory estoppel ... allows recovery even in the absence of consideration where reliance and change of position to the detriment of the promisee make it unconscionable not to enforce the promise." *Allen M. Campbell Co., Gen. Contractors, Inc. v. Virginia Metal Indus., Inc.*, 708 F.2d 930, 931 (4th Cir.1983); *see also* Restatement (Second) of Contracts § 90(1) (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). Thus, the Court will use both terms interchangeably.

simultaneously sustain both group and individual coverage. Defendant Provident Life mistakenly issued White an individual conversion policy. The face value and material terms of the policy were the same as that of the life insurance coverage under the group policy. White tendered premiums for the conversion policy from the time the policy was issued until the summer of 1988. In the summer of 1988, Provident Life discovered that it had erroneously issued a conversion policy to White. Immediately after the discovery, Provident Life notified White that he could not maintain simultaneous coverage under the group policy and the conversion policy. Provident Life told White that the individual policy had been issued inadvertently and that he should be reimbursed for all premiums paid, but White refused to accept repayment. Once the Court determined that ERISA governed this policy, the Court considered whether it would apply the doctrines of waiver and/or estoppel. White argued Provident Life's mistaken acceptance of premiums constituted a waiver of its right to deny dual recovery. The Fourth Circuit refused to allow Plaintiff's waiver or estoppel argument, stating that "ERISA ... does not incorporate the principles of waiver and estoppel." *Id* at 29. In support of its ruling, the Court further stated that, "In this case, **White cannot even point to any explicit assurances by Provident that he was entitled to double coverage.** Rather, he would have us hold Defendant's mistaken acceptance of premiums constituted a knowing waiver of rights that is in direct conflict with the plain written terms of an ERISA plan." *Id.* (emphasis added).

The *White* case seems to suggest that its ruling may have differed if more concrete and formal *written* assurances had been made. Thus, if the claimant is not entitled to the coverage sought under the written terms of an ERISA plan, benefits will not be issued on the basis of *oral* representations to the contrary. Several other courts have focused on the form of the communication. *See, e.g., Doe v. Blue Cross,* 112 F.3d 869, 875–76 (7th Cir.1997)(ERISA

does not permit the *oral* modification of substantive provisions of a written ERISA plan); *Thomason,* 9 F.3d at 650 (same); *Coleman v. Nationwide Life Insurance Co.,* 969 F.2d 54, 60 (4th Cir.1992), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993) (same); *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992) ("One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out *oral* modifications."); *Singer v. Black & Decker Corp.,* 769 F.Supp. 911 (D.Md.1991) (no recovery for insured based on *unwritten* plan amendments) (emphasis added). In *HealthSouth,* the Fourth Circuit, in discussing the viability of a promissory estoppel claim to an ERISA plan, held that under the controlling authority of *Coleman,* the plaintiff could not establish a promissory estoppel claim because it proposed an oral modification to the Plan and *Coleman* rejects a claim of that nature. *HealthSouth,* 101 F.3d at 1009. Thus, in the instant case, if Plaintiff could point to explicit assurances of benefit entitlements by Defendant, waiver and/or estoppel principles may apply.

■ The *White* case is similar to the present case before the Court. Both cases involve insured persons looking to receive recovery of benefits they were not technically entitled to receive. In *White,* the plaintiff claimed he was entitled to receive double recovery, and in the instant case, Plaintiff was to receive an additional six months of benefits as a result of his misstated age on his application. The crucial difference between the two claims is that the defendant in *White* learned of its mistake and corrected it. In the case now before the Court, however, Defendant noticed its mistake, but continued to promise Plaintiff through **written** correspondence that he would receive the additional six months of benefits. In *White,* the Court did not have before it evidence in the record that indicated White received any

explicit assurances by Defendant. In the instant case, Defendant made numerous written assurances to Plaintiff, leading Plaintiff to believe he would receive 48 months of benefits. This Court believes that the letters Defendant sent to Plaintiff stating that Plaintiff was entitled to an additional six months of benefits as well as the May 11, 1998 letter that states the Defendant waives the Misstatement of Age provision, are outcome-determinative in this case. Defendant's letters satisfy the *explicit assurances* exception set forth in *White.*

There is no question that Plaintiff had a reasonable belief that Paul Revere waived the Misstatement of Age Provision of the contract. The letter dated May 11, 1998, from Defendant clearly states that it did not intend to pursue the Misstatement of Age Provision, including the term "waive" in its letter. Under the apparent exception, the doctrine of waiver should be applied. The record provides adequate evidence that Paul Revere intentionally relinquished a known right. Defendant knew of its mistake and of the fact that it could assert its Misstatement of Age provision to shorten the benefits period. It, however, intentionally decided to waive that right. Therefore, the Court holds that the Plaintiff's waiver argument precludes Defendant's defenses to this action.

Alternatively, Plaintiff meets the elements of estoppel and can assert it as a theory of recovery under the facts of this case. Plaintiff relied on Defendant's letter dated June 12, 1997 which stated a promise that his benefits would not expire until March 21, 1999. In relying on the written assurances by Defendant, Plaintiff took extra time off from work as prescribed by his physician, after he informed Defendant his age had been misstated on his application. Plaintiff had an option to return to work or take additional time off from work, and thus, he made his decision in light of Defendant's representations. Based on Defendant's letter, Plaintiff acted to his own detriment on the belief that he would receive an additional six months of disability benefits. The Court believes Plaintiff relied on Defendant's promise to his detriment by leaving work, only to be informed later that he would not receive six months of disability benefits. Defendant has waived its defenses and it is estopped from asserting them in this case. Accordingly, Plaintiff is entitled to the additional six months of benefits.

## D. Equitable Estoppel

■ The doctrine of equitable estoppel can also be applied to the facts of this case. Notions of promissory estoppel and equitable estoppel are often conflated. "Indeed, the Fourth Circuit itself is not free of the doctrinal confusion, as is demonstrated by [its] opinion in ... *Lawrence v. Mars, Inc.,* 955 F.2d 902, 907 (4th Cir.)." *Elmore,* 23 F.3d at 868 n. 5. Both types of estoppel require the element of reliance by the claimant. While all types of estoppel are grounded in principles of equity, equitable estoppel differs from estoppel (or promissory estoppel) in that it requires an actual misrepresentation and consideration. *Allen,* 708 F.2d at 931–32. The Fourth Circuit has more clearly applied equitable estoppel to ERISA cases. The Court holds that Defendant should be equitably estopped from asserting its defenses because Plaintiff relied on Defendant's misstatement to his own detriment. The doctrine of equitable estoppel precludes a party from exercising contractual rights because of their own inequitable conduct toward the party asserting estoppel. *See Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1299 (6th Cir.1991).

■ The Fourth Circuit recognizes the applicability of the equitable estoppel doctrine to policies governed by ERISA, but has yet to apply the doctrine when there is no evidence the Plaintiff relied on the Defendant's promises to their own detriment. *See Bakery and Confectionery Union and International Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1028 (4th Cir.1997). Equitable estoppel can be applied as long as Plaintiff can

show a reliance created by Defendant. *See Bakery,* 118 F.3d at 1028; *White,* 114 F.3d at 29; *Elmore,* 23 F.3d at 858 (affirming the theory of recovery that "the representation created an enforceable obligation under a federal common law theory of equitable estoppel, subject to proof of detrimental reliance"). Equitable estoppel "arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 127 (4th Cir.1994) (quoting *Heckler,* 467 U.S. at 59, 104 S.Ct. 2218 (1984)); *Bakery,* 118 F.3d at 1027 (quoting *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990)). Reliance on the misrepresentation is reasonable only if the party asserting estoppel does not or should not know the truth. *Id.* at 1027. "If at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge, ... he cannot claim to have been misled by relying upon the representation or concealment." *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 59–60 n. 10, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Cannon v. Group Health Services of Oklahoma, Inc.,* 77 F.3d 1270, 1276–77 (10th Cir. 1996). The reliance must be shown by evidence of a definite and identifiable action. *See also Lockrey v. Leavitt Tube Employees' Profit Sharing Plan,* 748 F.Supp. 662 (N.D.Ill.1990) (extending federal common law to include equitable estoppel principles); *Lipscomb v. Transac, Inc.,* 749 F.Supp. 1128 (M.D.Ga.1990) (same). The assurances received by Plaintiff from Defendant were in writing from agents of the Defendant. Defendant issued its letter misrepresenting that it would continue benefits without first inspecting Plaintiff's file which included a statement from its underwriter of Plaintiff's correct birth date. The Court assumes that in consideration of such benefits, premiums continued to be submitted on Plaintiff's behalf. Furthermore, Plain-

tiff took additional time off work, believing he would receive benefits until March 1999.

Justice requires an application of all of the aforementioned equitable principles. Upon a thorough reading of the Policy and letters pertaining to Plaintiff's coverage, it is obvious Defendant has made a mess of this Policy. Defendant seems to have been lax in its correspondence with the Plaintiff. If Defendant had properly investigated the Plaintiff's application when it was submitted during the two year period before the Incontestable Clause took effect, as required by Maryland law, Defendant would have noticed the mistake on the application prior to issuing the Policy in February 1990. Furthermore, Defendant had an opportunity to correct the error when Plaintiff himself brought it to Defendant's attention. This could have been achieved by examining Plaintiff's medical records submitted by Defendant's underwriter, which contains Plaintiff's correct birth date of August 24, 1932, and making adjustments. The insurer cannot be allowed to make misrepresentations to the insured and lull him into a false sense of security by making promises if can later revoke. This Court finds that Defendant's conduct in the implementation of the Policy caused an inequitable result. Thus, under Fourth Circuit precedent, the Court applies the doctrines of waiver, estoppel, and equitable estoppel, and finds that Plaintiff is entitled to the additional six months of benefits.

**E. Signature Requirement**

 Defendant asserts Plaintiff had a duty to read all of the statements in the original policy prior to rendering his signature, and is responsible for all the statements in said policy. Plaintiff suggests that the fault of the agent should weigh against such a conclusion. Maryland courts do impose a heavy burden on applicants to read the application and make sure all statements in the application are true. *See Fitzgerald v. Franklin Life In-*

surance Co., 465 F.Supp. 527, 535 (D.Md. 1979), aff'd 634 F.2d 622 (4th Cir.1980). Cases applying this principle, however, have done so in the face of material misrepresentations on the part of the insured. See id. A material misrepresentation will be found if the insurer in good faith would either not have issued the policy or would not have issued a policy at the same premium rate if the true facts had been known to the insurer as required either by the application for the policy or otherwise. See MD. CODE ANN. (Insurance) § 12–207; Bryant v. Provident Life and Accident Ins. Co., 22 F.Supp.2d 495, 497 (D.Md. 1998). The present case does not involve a material misrepresentation, rather it a misstatement of age on the part of Defendant's agent, Turney. Plaintiff's age is not considered a material misrepresentation because it does not determine whether the policy would have been issued but for the misrepresentation. It only determines the duration of the policy because the Policy provides benefits for those born in 1932, which covers Plaintiff.

The Court believes that applicants heavily rely on an insurance company's agents to check for potential errors on applications. Moreover, Maryland courts have held that the purpose of the incontestability clause in insurance policies is to allow the "insurer a reasonable opportunity" to investigate the statements made by the applicant procuring the policy. Mutual Life Insurance Co. of New York v. Insurance Commissioner for the State of Maryland, 352 Md. 561, 723 A.2d 891, 895, (1999) (citing Massachusetts Casualty Insurance Co. v. Forman, 516 F.2d 425, 428 (5th Cir.1975), cert. denied, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976)). In the present case, Defendant had a reasonable opportunity to investigate the age of Plaintiff before issuing the policy. The medical evaluation provided by Defendant's own underwriter contained Plaintiff's correct birth date. Moreover, Plaintiff brought the error to Defendant's attention before Defendant promised to pay the additional six months of benefits. For the foregoing reasons the Court holds that the burden associated with Plaintiff's signature is not dispositive, and Defendant should be held to the terms of the contract.

## F. Fraud and Misrepresentation[5]

 Defendant asserts in its amended counter-claim that the Plaintiff induced Defendant to pay him additional money by misrepresenting his age to Defendant's agent, Tumey. As a result of this misrepresentation by Plaintiff, Defendant alleges it overpaid Plaintiff $21,000.00 in disability benefits. Plaintiff avers that he never misrepresented any untrue statements to Defendant or its agent. The burden is on the insurer to establish fraud and misrepresentation by the insured in an application for insurance. See Fitzgerald, 465 F.Supp. at 535. In order to prevail on a claim of misrepresentation, Plaintiff (here, counter-claim plaintiff) must prove that:

1) The defendant owing a duty of care to the plaintiff, negligently asserts a false statement; 2) the defendant intends that his statement will be acted upon by the plaintiff; 3) the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; 4) the plaintiff, justifiably, takes action in reliance on the statement; and 5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Sheets v. Brethren Mut. Ins. Co., 342 Md. 634, 656–57, 679 A.2d 540, 551 (1996). The first issue to be determined is whether the record establishes that Plaintiff asserted a false statement. See Bryant, 22 F.Supp.2d at 497. The Court believes the evidence weighs heavily in Plaintiff's favor. Plaintiff never told the agent, Tumey, he was born in 1933. Rather, Tumey record-

---

**5.** Although Defendant's counter-claim does not explicitly state its theory of recovery, the Court construes the counter-claim as a claim for overpayment due to fraud and misrepresentation by Plaintiff.

ed the information incorrectly when he prepared the application. *See* Plaintiff's Exhibit 3. Tumey admitted in his affidavit that he incorrectly recorded the information on the initial application for benefits. There is nothing in the record that disputes this fact. Therefore, the Court finds no evidence of misrepresentations by Plaintiff primarily because Plaintiff did not assert a false statement. As the evidence fails to meet the first element of misrepresentation, the Court will deny Defendant's cross-motion for summary judgment on its misrepresentation claim, and find for Plaintiff as a matter of law.

The second claim Defendant asserts in its amended counter-claim is one for fraud. Defendant argues Plaintiff's actions constitute fraud. In order to succeed on its claim of fraud, Paul Revere must prove:

1) that [Band] made a false representation, 2) that its falsity was either known to [Band] or that the representation was made with reckless indifference as to its truth, 3) that the misrepresentation was made for the purpose of defrauding [Paul Revere], 4) that [Paul Revere] relied on the misrepresentation and had the right to rely on it, and 5) that [it] suffered compensable injury resulting from misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994). For the same reasons that Defendant cannot prevail on its claim of misrepresentation, Defendant cannot prevail on its fraud claim. As discussed above, Plaintiff did not misrepresent his age to Defendant. In an affidavit, Defendant's agent, Tumey, states that Plaintiff gave him the correct age, but he recorded the information incorrectly on the application. Because Plaintiff did not give the Defendant the wrong age, as is required to make a showing of fraud, Defendant's claim must fail. Therefore, the Court finds for the Plaintiff on the fraud and misrepresentation claims, and the summary judgment motions on Defendant's counter-claims will be resolved in Plaintiff's favor.

## CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment, and deny Defendant's cross-motion for summary judgment. The Court is unclear as to the precise amount of damages Plaintiff is entitled to. The Court understands that there may be a possibility of a set-off due to increased payments paid by Defendant, and thus, the parties may have different positions as to the effect of the increase in payment. Therefore, to facilitate the Court's determination of damages to be awarded to Plaintiff, the parties are encouraged to submit a joint stipulation as to the damages Plaintiff is entitled to within seven (7) days of the entry of this Order, to the extent such stipulation is possible. If the parties fail to agree to a stipulation, Plaintiff shall file within seven (7) days from the stipulation deadline, a statement of damages he believes he is entitled to under this ruling. Defendant shall have seven (7) days following Plaintiff's submission to file any response to Plaintiff's damages request, including its position on any set-offs, and Plaintiff shall file a reply within seven (7) days after the filing of Defendant's response. A separate Order consistent with this Opinion will follow.